**Tsehaynesh Asfiha HADERA, Petitioner**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent**

**No. 97–1047.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 30, 1998.

Decided Feb. 27, 1998.

---

David Goren argued the cause and filed the briefs for petitioner.

Laura A. Smith, Attorney, U.S. Department of Justice, argued the cause for respondent. With her on the brief were Frank W. Hunger, Assistant Attorney General, and Christopher C. Fuller, Senior Litigation Counsel, Washington, DC. Michael P. Lindemann, Assistant Director, Washington, DC, entered an appearance.

Before: WALD, TATEL and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

Petitioner seeks review of the Board of Immigration Appeals' denial of her application for political asylum. Because she failed to file her petition within the period required by law, we dismiss it for lack of jurisdiction.

I

A native and citizen of Eritrea, petitioner Tsehaynesh Asfiha Hadera entered the United States in October 1988 as a nonimmigrant visitor authorized to stay six months. Because Hadera never left the country as required by the terms of her visa, the Immigration and Naturalization Service issued an order to show cause in June 1994 why she should not be deported. Conceding deportability, Hadera sought political asylum. Alternatively, she sought withholding of deportation or voluntary departure.

Testifying before an Immigration Judge in support of her asylum application, Hadera explained that she grew up in the portion of Ethiopia that became the independent country of Eritrea in May 1993, that her husband—a supporter of the Eritrean independence movement—was arrested and imprisoned for his political activities, and that the beatings he received in prison eventually caused his death. She further testified that because she continued her husband's political activities, Ethiopian authorities imprisoned her for six months, beating her so severely that her right arm remains permanently disabled. Hadera testified finally that six months after her release from prison—and after one other short period of incarceration—she came to the United States, leaving her entire family in Ethiopia. Acknowledging that the movement she supported succeeded in establishing an independent Eritrean state, Hadera nevertheless argued that her persecution had been so severe that she should not be forced to return.

The Immigration Judge recognized that Hadera was persecuted for her political views. Because he also found that "no prospect of future persecution exists given the

fact that [Hadera's] political views ultimately prevailed and the political organization she supported has succeeded in establishing an independent country of Eritrea" and that Hadera "will more likely be seen as a heroine than an object for potential persecution if returned to Eritrea," the Immigration Judge denied her asylum application as a matter of discretion, *see* 8 U.S.C. § 1158(a) (1994) ("[T]he alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title.") (amended 1996). The Immigration Judge also denied Hadera's application for withholding of deportation.

Affirming the Immigration Judge and emphasizing that Hadera would face no persecution in the now-independent Eritrea, where her remaining family members still reside, the Board of Immigration Appeals issued a final order of deportation on November 20, 1996, permitting Hadera to depart voluntarily within thirty days of the date of the order. On December 13, Hadera asked the district director for an extension of her voluntary departure time. Denying this request on January 14, 1997, the district director noted on what appears to be the back of the rejection letter that "Ms. Hadera may file a petition for review within 90 days of the Board's decision." On January 23, 1997, Hadera filed a petition for review in this court, arguing that the Board had abused its discretion by denying her application for asylum.

## II

Not mentioned by the parties in their principal briefs, but critical to whether we even have jurisdiction over Hadera's petition, section 309(c)(4)(C) of the recently-enacted Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009–546 (1996), *as amended by* Act of Oct. 11, 1996, Pub.L. No. 104–302, 110 Stat. 3656 (1996) (codified in scattered sections of the U.S.C.) ("IIRIRA"), requires that a "petition for judicial review must be filed not later than 30 days after the date of the final order of exclusion or deportation." *Id.* § 309(c)(4)(C), 110 Stat. at 3009–626. While most of IIRIRA did not take effect

until April 1, 1997, *see id.* § 309(a), 110 Stat. at 3009–625, it contained a set of transitional rules governing judicial review of all final orders of deportation and exclusion entered more than thirty days after IIRIRA's enactment, *see id.* § 309(c)(4), 110 Stat. at 3009–626. Among these rules is section 309(c)(4)(C)'s thirty-day requirement for filing petitions for review of Board decisions. Even though this rule clearly governs our review of the Board's final order of deportation in this case (the Board issued the order on November 20, over thirty days after President Clinton signed IIRIRA), Hadera filed her petition on January 23, 1997, more than a month after the thirty-day deadline had passed.

■ Because jurisdiction cannot be waived, *see Floyd v. District of Columbia,* 129 F.3d 152, 155 (D.C.Cir.1997) ("[J]urisdiction cannot be waived and we have an independent obligation to assure ourselves of jurisdiction, even when the parties fail to challenge it."), we directed the parties to be prepared at oral argument to address the jurisdictional issue. In a supplemental brief and then again at oral argument, the INS argued that we lack jurisdiction. Conceding that the thirty-day rule applies, Hadera argued that we nevertheless have jurisdiction because the thirty-day period did not begin running until the district director denied her motion for an extension of voluntary departure time on January 14, and because the district director informed her on that day that she could file her petition for review within ninety days of the Board's decision, thereby estopping the agency from now claiming that her petition was untimely.

■ Neither of Hadera's arguments has merit. Filing a voluntary departure extension request does not extend the time available to petition for review of a final order of deportation. *See Foti v. INS,* 375 U.S. 217, 219 n. 1, 84 S.Ct. 306, 308–09 n. 1, 11 L.Ed.2d 281 (1963) ("The granting of voluntary departure relief does not result in the alien's not being subject to an outstanding final order of deportation."); *Karimian–Kaklaki v. INS,* 997 F.2d 108, 112 (5th Cir.1993) ("The privilege of voluntary departure granted to petitioners is irrelevant to the finality (and thus

appealability) of the BIA order."); *see also* 8 C.F.R. § 243.1 (1997) ("[A]n order of deportation, including an alternate order of deportation coupled with an order of voluntary departure ... shall be final as of the date of the Board's decision."). Although INS counsel was unable to explain the district director's notation that Hadera could file a petition for review within ninety days of the Board's decision, we need not decide whether such a statement could affect our jurisdiction because the notation, made about three weeks after the statutory deadline had passed, could not possibly have caused her late filing. We therefore lack jurisdiction over Hadera's petition. *See Mayard v. INS,* 129 F.3d 438, 439 (8th Cir.1997) (dismissing for lack of jurisdiction appeal filed eighty-four days after final order); *Narayan v. INS,* 105 F.3d 1335, 1335 (9th Cir.1997) (dismissing for lack of jurisdiction petition for review filed forty-seven days after final order).

During oral argument, the INS identified a second problem with Hadera's petition: Section 309(c)(4)(D) of IIRIRA states that "the petition for review shall be filed with the court of appeals for the judicial circuit in which the administrative proceedings before the special inquiry officer or immigration judge were completed." IIRIRA § 309(c)(4)(D), 110 Stat. at 3009–626. Because the Immigration Judge conducted Hadera's hearing in Arlington, Virginia, Hadera should have filed her petition in the Fourth Circuit.

Hadera has thus filed her petition not only too late, but also in the wrong court. When we asked Hadera's counsel at oral argument whether we should dismiss the petition or transfer it to the Fourth Circuit, he urged transfer so he would have "another shot." The INS told us that the answer might turn on whether section 309(c)(4)(D) establishes a jurisdictional or a venue requirement, but we think that makes no difference in this case. Although we possess statutory authority to transfer cases over which we lack jurisdiction "to any other such court in which the action or appeal could have been brought at the time it was filed," 28 U.S.C. § 1631 (1994), as well as inherent authority to transfer cases over which we lack venue if "in the interest of justice," *Alexander v. Commissioner,* 825 F.2d 499, 502 (D.C.Cir.1987), neither is appropriate here because Hadera's petition would have been untimely even if filed in the Fourth Circuit, *see Oum v. INS,* 613 F.2d 51, 53 (4th Cir.1980) (holding that court lacks jurisdiction over petition filed after statutory deadline). Hadera's petition is dismissed.

*So ordered.*