**HALLIBURTON COMPANY, on behalf of its divisions, Halliburton Energy and Halliburton Drilling Systems, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 96–49T.**

United States Court of Federal Claims.

June 26, 1998.

John W. Polk, Washington, D.C., for plaintiff.

Jeanne E. Davidson, Washington, D.C., for defendant.

### *Opinion and Order to Show Cause*

WEINSTEIN, Judge.

This is one of the numerous cases pending before this court regarding the Harbor Maintenance Tax (HMT) imposed under the authority of 26 U.S.C. §§ 4461–62. The Supreme Court recently, in *United States v. U.S. Shoe Corp.,* — U.S. ——, 118 S.Ct. 1290, 140 L.Ed.2d 453 (1998), held this tax to be an unconstitutional tax on exports in violation of the Export Clause, U.S. Const. Art. I, § 9, cl. 5. *Id.* 118 S.Ct. at 1292, 1296.

The Supreme Court also held: that the Court of International Trade (C.I.T.) has exclusive jurisdiction over HMT challenges pursuant to 28 U.S.C. § 1581(i)(4), *id.* 118 S.Ct. at 1293–1294; that this court lacks jurisdiction over such cases, *id.* 118 S.Ct. at 1294 n. 3; and that the plaintiffs "may invoke 28 U.S.C. § 1631," which authorizes inter-court transfers, when "in the interest of justice," to cure lack of jurisdiction. *Id.* 118 S.Ct. at 1294. (The Supreme Court in *U.S. Shoe* did not expressly address the question of whether transfer of cases barred by C.I.T.'s statute of limitations would be appropriate.)

On April 30, 1998, defendant filed a motion to dismiss this case for lack of jurisdiction in light of the U.S. Supreme Court's decision in *U.S. Shoe.* Defendant, however, opposed as

not "in the interest of justice" the transfer of any case that would have been time-barred by the applicable statute of limitations if filed initially in the C.I.T.

On May 29, 1998, plaintiff filed its response to the motion to dismiss, together with a motion to transfer this action to the C.I.T. pursuant to § 1631. Plaintiff contends that the statute of limitations issue has not yet been resolved and suggests that it should be resolved by the C.I.T., after transfer of this action from this court to the C.I.T. (Defendant filed its response to the motion to transfer, again opposing such transfer, and its reply regarding its motion to dismiss on June 15, 1998).

The transfer statute, 28 U.S.C. § 1631 provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal *to any other such court in which the action or appeal could have been brought at the time it was filed or noticed,* and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631 (emphasis added).

### Jurisdiction of Court of Federal Claims

■ The answer to the first question raised by 28 U.S.C. § 1631, whether this court has jurisdiction over these cases, should be evident from the Supreme Court's holding in *U.S. Shoe* that the C.I.T. has exclusive jurisdiction over these cases.[1] While the court did not expressly hold that other types of claims arising from the same facts were barred, *e.g.,* claims contesting the tax on due process grounds, or seeking compensation for its imposition pursuant to the Fifth Amendment takings clause, we must, I believe, presume that when the Supreme Court said the C.I.T.'s jurisdiction was exclusive of the Court of Federal Claims (CFC), it meant "exclusive" of takings claims in the CFC as well. That is, we must assume the court considered, and rejected, the possibility of other grounds for subject matter jurisdiction, such as pursuant to 28 U.S.C. § 1491(b) (which the Supreme Court cited immediately after holding that the CFC had no jurisdiction over the HMT challenges pending in this court).

■ In any event, a takings claim arising from the same event (statutory imposition of tax in violation of the Export Clause) is not within this court's jurisdiction for three reasons: First, an unauthorized act, which plaintiffs have alleged in these cases, cannot form the basis for a takings claim. *See Tabb Lakes, Ltd. v. United States,* 10 F.3d 796, 803 (Fed.Cir.1993) ("to assert a takings claim, the government must have had the authority to regulate") (citing *Florida Rock Indus. v. United States,* 791 F.2d 893, 899 (Fed.Cir. 1986)). Such claims sound in tort, and tort claims are not within the jurisdiction of this court. *Id.; cf. Catalina Properties, Inc. v. United States,* 143 Ct.Cl. 657, 166 F.Supp. 763 (1958) (agency mistake may give rise to a due process claim, not a takings claim cognizable in the Court of Claims). Second, the imposition of a tax, even one that is subsequently invalidated, is not a Fifth Amendment takings. *See Coleman v. Commissioner,* 791 F.2d 68, 70 (7th Cir.1986).[2] Third, the proper basis for analyzing such a claim is

---

1. 28 U.S.C. § 1581(i)(4) gives the C.I.T. exclusive jurisdiction over a residual category of cases "aris[ing] out of any [federal] law ... providing for ... administration and enforcement with respect to the matters referred to in [§ 1581(i)(1), referring to 'revenue from imports'] ...."

2. The Seventh Circuit in *Coleman* stated:
   Taxes indeed "take" income, but this is not the sense in which the constitution uses "takings." Article I, section 8, clause 1 of the constitution grants to Congress "Power To lay and collect Taxes". The power thus long predates the Sixteenth Amendment, which did no more than remove the apportionment requirement of Art. I, sec. 2, cl. 3 from taxes on "incomes, from whatever source derived". Although the government might try to achieve through special taxes what the Takings Clause of the Fifth Amendment forbids if done directly, the general tax levied by the Internal Revenue Code does not offend the Fifth Amendment.

as an illegal exaction. *See Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1007–1008 (1967). While the Court of Federal Claims has jurisdiction over illegal exaction claims generally, the statute provides an (exclusive) remedy for this particular type of illegal exaction in the C.I.T., *see* 28 U.S.C. § 1581(i)(4). *See Eastport,* 372 F.2d at 1008 (holding that suits to recover illegal exactions could be brought in the then Court of Claims *"except where Congress [] expressly placed jurisdiction elsewhere."*) (emphasis added). The mere fact that the statute of limitations may have run does not give this court subject-matter jurisdiction that Congress expressly has placed elsewhere. *See United States v. Dalm,* 494 U.S. 596, 602, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990) (holding that a two-year limitations period bars recovery regardless of whether the tax is illegally collected).

The Supreme Court's understanding that compensation clause authority would not preempt export clause restrictions in cases before the CFC may be surmised from the court's acknowledgment of the Constitution's takings clause in the same breath as it discussed the commerce and export clauses, *see U.S. Shoe,* 118 S.Ct. at 1295.

Finally, to give this court authority over the HMT cases under the takings clause would render essentially useless the C.I.T.'s jurisdictional statute, at 28 U.S.C. § 1581(i) (giving the CIT exclusive jurisdiction over cases such as this, *see supra,* note 1). *See Broughton Lumber Co. v. Yeutter,* 939 F.2d 1547, 1557 (Fed.Cir.1991) (plaintiff's theory that it could challenge the Columbia River Gorge National Scenic Area Act (Gorge Act) in Oregon district court as a takings (rather than exclusively in the then-United States Claims Court) rejected, in part, on grounds that this "would ... render meaningless [the Gorge Act provision] ... giv[ing] jurisdiction to the Oregon and Washington district courts.")

### Jurisdiction of Transferee Court

■ If the Court of Federal Claims lacks jurisdiction over an action, the court is compelled ("shall") by § 1631 to consider whether transfer to another court is appropriate.

Section 1631 mandates transfer if the action could have been brought, at the time it was filed, in the transferee court (here, the C.I.T.). The case law, see discussion *infra* at 275, also holds that, before allowing a transfer, the transferor court must determine whether the action "could have been brought" in the transferee court. Thus, the *transferor* court must determine whether the *transferee* court would have had jurisdiction if it had been brought in the transferee court.

This jurisdictional determination must, as is clear from the many cases on this point, be made by the *transferor* court. *See, e.g., United States v. Heller,* 957 F.2d 26, 27 (1st Cir.1992) (denying a motion to transfer an appeal (to the Temporary Emergency Court of Appeals (TECA), which had exclusive jurisdiction of the appeal), based on transferor court's determination that the appeal would have been untimely in the TECA at the time it was filed.) The *Heller* court stated: "[§ 1631's] statutory language makes it clear that in order for the transferor court to decide whether the statutory requirements for transfer are met, the transferor court must first decide whether the appeal could have been brought in the transferee court at the time it was filed."

Similarly, the Federal Circuit recently, in *Dalton v. Southwest Marine, Inc.,* 120 F.3d 1249, 1252–1253 (Fed.Cir.1997), concluded (1) that it did not have jurisdiction over an appeal of an Armed Services Board of Contract Appeals decision involving a maritime contract, and (2) that transfer of the appeal to district court, pursuant to § 1631, was proper because the limitation period of the Contract Disputes Act (six years), not of the Suits in Admiralty Act (two years), applied, and the appeal therefore could have been brought in district court at the time it was filed in the Federal Circuit. Notably, the Federal Circuit did not shy away from inquiring into, and deciding, the jurisdictional prerequisites in the *district* court.

Conversely, in *Goewey v. United States,* 222 Ct.Cl. 104, 612 F.2d 539, 541 (1979), the Court of Claims denied plaintiff's motion, under a similarly-worded predecessor statute to § 1631, to transfer to the district court a national service life insurance claim over

which the Court of Claims had no jurisdiction, based on the *Court of Claims'* determination that plaintiff's claim was untimely *in the district court* at the time it was filed.

The court in *Goewey* noted: "Transfer of a claim that is barred by the statute of limitations would not serve [the interests of justice]." *See also Cavin v. United States,* 956 F.2d 1131, 1136 (Fed.Cir.1992) (Claims Court properly refused to transfer tort claims to district court when claims time-barred in district court); *Hadera v. INS,* 136 F.3d 1338, 1341 (D.C.Cir.1998) (transfer of case to Fourth Circuit was not appropriate when petition for review would have been untimely even if properly filed in the Fourth Circuit); *Macrotel Int'l Corp. v. United States,* 34 Fed.Cl. 98, 100 (1995); *Western Neb. Resources Council v. Wyoming Fuel Co.,* 641 F.Supp. 128, 138–139 (D.Neb.1986) (granting defendant's motion to dismiss because plaintiff's claims were filed beyond the period allowed for review by the court of appeals, and therefore were not subject to transfer under § 1631.) This court has discovered no binding precedent permitting the transferor court to transfer without deciding the transferee court's jurisdiction. *Cf. Pentax Corp. v. Myhra,* 72 F.3d 708, 711 (9th Cir.1995) (ordering district court to transfer case for C.I.T. to determine its own jurisdiction, because it was "prudent," but "express[ing] no opinion on the statute of limitations issue or whether the C.I.T. would have had original jurisdiction if Pentax had originally filed its complaint in that court.")

That the transferor court must make a decision regarding the transferee court's jurisdiction is also clear from cases such as *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 819, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988), which held that "[u]nder law-of-the-case principles, if the transferee court can find the [transferor court's] transfer decision plausible, its jurisdictional inquiry is at an end [citation omitted]. . . . While adherence to the law of the case will not shield an incorrect jurisdictional decision [by a Court of Appeals] should this Court choose to grant review . . . , it will obviate the neces-

sity for us to resolve every marginal jurisdictional dispute." *Christianson* thus underscores the importance of a proper decision by the transfer court on the jurisdiction of the transferee. This principle is equally applicable to transfer decisions by lower courts, which, if disputed, may require action by the appropriate appellate court.

In *Brunswick Corp. v. United States,* No. 97–36C (Fed.Cl. June 18, 1998), also an HMT case, another member of this court concluded (as does this court, for the same basic reasons) that this court has no subject matter jurisdiction over the HMT cases. Unlike this court, the court in *Brunswick* concluded that transfer to the C.I.T. was appropriate, noting that defendant did not oppose transfer. The court in *Brunswick* did not, however, set out its grounds for ordering the transfer under 28 U.S.C. § 1631 nor discuss why this court need not decide the C.I.T.'s jurisdiction. *See id.* at 1, n. 1.

### Conclusion

◼ For the reasons discussed above, the court concludes that it is required to determine whether this action would have been time-barred in the C.I.T. at the time it was filed in this court and to dismiss the case, rather than transfer it, if it would have been so barred.[3] Some plaintiffs in this court's HMT cases have alleged, without reference to any legal or statutory authority, that the question of the C.I.T.'s jurisdiction is "best" "decided as an affirmative defense," by the C.I.T. While having the transferor court make this determination may not appear to be the most efficient use of the courts' respective areas of expertise, the conclusion that it must do so appears inescapable. Further, determining jurisdiction is a legal, not a factual, matter and therefore deference to the transferee court's superior familiarity with HMT cases is unnecessary. *See Akro Corp. v. Luker,* 45 F.3d 1541, 1543 (Fed.Cir. 1995) (where jurisdictional facts are undisputed, jurisdiction determination presents pure question of law).

Because the issue of the C.I.T.'s jurisdiction has not been fully briefed in this court,

---

3. Plaintiff apparently has pending before the C.I.T. similar claims regarding HMT payments

made within two years before such claims were filed in the C.I.T.

the court orders that, on or before July 10, 1998, plaintiff, which bears the burden of proof because it has moved for transfer, and also because it bears the burden of establishing jurisdiction, *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), shall file a brief showing why the court should not dismiss the claims in this case.[4] Defendant's response shall be due within 10 days of the filing of plaintiff's brief. Plaintiff's reply, if any, shall be due within 7 days of the filing of defendant's response. In the interests of preserving their resources, the parties are instructed to limit their briefs to ten pages (four pages for reply).

---

4. The C.I.T. already has held that the two-year statute of limitations found in 28 U.S.C. § 2636(i) is applicable to HMT challenges. *See U.S. Shoe Corp. v. United States*, 907 F.Supp. 408, 418 (C.I.T.1995), *aff'd*, 114 F.3d 1564 (Fed.Cir. 1997), *aff'd*, —— U.S. ——, 118 S.Ct. 1290, 140 L.Ed.2d 453 (1998). In addition, the C.I.T. has requested briefing of the jurisdictional issue in several of these cases, including this one. *See* Defendant's Reply Regarding Motion to Dismiss and Response to Plaintiff's Request for Transfer, filed June 15, 1998.