Williams, J.
 

 This case presents the question whether charges for water and electricity furnished by an incorporated village through its municipally owned water works and electric light plant are a lien prior to the lien of a mortgage filed for record before the certification to the county auditor and placement on the tax duplicate for collection.
 

 The water and electricity were supplied to the mortgagors on the mortgaged premises, but whether before or after the filing of the mortgage is not disclosed by the record. Counsel state in their brief, however, that the water and electric current were furnished subsequent to the delivery and recording of the mortgage. Moreover it does not appear that the utility charges were certified or placed on the duplicate against any particular real estate; but it is clear that the certification and placement were subsequent to the filing of the mortgage.
 

 Since a lien would not exist in the absence of statutory provisions creating it, it is necessary to consider the statutes which throw light on the inquiry.
 

 
 *187
 
 The answer to the question presented turns in the main upon the interpretation of Section 4361, G-eneral Code. That section, which applies to villages only, recites in part as follows:
 

 “The hoard of trustees of public affairs shall manage, conduct and control the water works, electric light plants, * * * make such by-laws and regulations as it may deem necessary * * *. Such by-laws and regulations when not repugnant to the ordinances, to the Constitution or to the laws of the state, shall have the same validity as ordinances. For the purpose of paying the expenses' of conducting and managing such water works, * * * of making necessary additions thereto and extensions thereof, and of making necessary repairs thereon, such trustees
 
 may assess a water, light, power, gas or utility rent, of sufficient amount, in such mcm%er as they deem most equitable, upon all tenements and premises supplied with water, light,
 
 # * *
 
 and, when such rents are not paid, such trustees may certify the same over to the auditor of the county in which such village is located to be placed on the duplicate and collect as other village toases
 
 or may collect the same by actions' at law in the name of the village. The board of trustees of public affairs shall have the same powers and perform the same duties as are possessed by, and are incumbent upon, the director of public service as provided in Sections 3955, 3959, 3960, 3961, 3964, 3965, 3974, 3981, 4328, 4329, 4330, 4331, 4332, 4333, and 4334 of the General Code, and all powers and duties relating to water works' in any of these sections shall extend to and include' electric light, power and gas plants and such other similar public utilities, and such boards shall have such other duties as may be prescribed by law or ordinance not inconsistent herewith.” (Italics' ours.)
 

 Counsel for appellees claim that Section 4361 gives villages the same rights in the collection of delinquent utility charges as are afforded in the collection of or
 
 *188
 
 dinary taxes and special assessments for improvements. They do not claim that such charges are taxes' as that term is generally understood or legally defined, but do insist that for purposes and means of collection they enjoy the same lien and precedence which taxes enjoy. They also contend that special assessments are distinctly made a lien upon the assessed property and by analogy utility charges are likewise a lien with similar privilege.
 

 Section 3897, General Code, makes special assessments a lien upon the land assessed, from the date of the assessment. Section 5713, General Code, gives the state a first and best lien on the lands and lots described in the delinquent land list, for the amount of taxes, assessments and penalty and accrued interest charged prior to delivery of such list. Other kindred sections may be found' relating to the lien of taxes and assessments. The term assessment as used in these connections refers to special assessments levied to pay the cost of public improvements.
 

 As is pointed out in
 
 City of Lima
 
 v.
 
 Lima Cemetery Assn.,
 
 42 Ohio St., 128, 51 Am. Rep., 809, in a broad sense an assessment is a tax and a tax an assessment. While there is a generic difference in that taxes are levied to pay the expense of government and an assessment is levied upon property abutting or adjacent to a public improvement with reference to the special benefits conferred for the purpose of paying the cost thereof, yet both are levied under the sovereign power of the state upon the assumption that they are for the public weal and both give rise to liens which have generally been held superior to all others. 30 L. R. A. (N. S.), 761; Hamilton on Laws of Special Assessments, 699, Section 708; 2 Page & Jones on Taxation by Assessment, 1770, Section 1068; 19 Ruling Case Law, 412, Section 192. In keeping with these principles courts of Other jurisdictions have held that special assessments are a peculiar species of taxation.
 
 *189
 

 Daly
 
 v.
 
 Morgan, Treas.,
 
 69 Md., 460, 490, 16 A., 287, 300, 1 L. R. A., 757;
 
 Billings Sugar Co.
 
 v.
 
 Fish,
 
 40 Mont., 256, 106 P., 565, 26 L. R. A. (N. S.), 973, 20 Ann. Cas., 264;
 
 Ittner
 
 v.
 
 Robinson,
 
 35 Neb., 133, 137, 52 N. W., 846, 847;
 
 Farnham
 
 v.
 
 City of Lincoln,
 
 75 Neb., 502, 506, 106 N. W., 666, 668;
 
 Winona & St. P. Ry. Co.
 
 v.
 
 City of Watertown,
 
 1 S. D., 46, 44 N. W., 1072;
 
 Pettit
 
 v.
 
 Duke, Treas.,
 
 10 Utah, 311, 37 P., 568; 2 Cooley on Taxation (3rd Ed.), 1153. Charges for utility service lack the essential elements of taxes and special assessments, though sometimes' referred to as assessments. The distinction is pointed out in 1 Page & Jones on Taxation by Assessment, Sections 6 and 353 where many cases are cited. Therefore it cannot be said that by analogy the assessments for utility charges have the same lien and priority as special assessments.
 

 What then is the nature of the assessment provided for in Section 4361, General Code ?
 

 There is no magic in the word “assess” and it must be interpreted in the light of the context; so interpreted it means no more than establish. The board of trustees of public affairs is not given any legislative power under which the utility charges could be made a lien, but in the act of assessing exercises an administrative function. The only power the board has in making the so-called assessment is to fix utility rates for the premises supplied with utility service. The power to assess does not imply authority to create a lien, and the village did not acquire a lien through furnishing water and electricity to the premises at prescribed rates.
 

 In
 
 Hohly, Dir. of Dept. of Pub. Service,
 
 v.
 
 State, ex rel. Summit Superior Co.,
 
 128 Ohio St., 257, 191 N. E., 1, this court had before it Section 3958, General Code, which applies to cities only, and is not one of the statutes mentioned in Section 4361. That section like
 
 *190
 
 wise provides that the director of public service may
 
 assess
 
 water rents and that if the
 
 assessments
 
 are not paid when due, they shall be “collected in the s'ame manner as other city taxes.” The court held that the recitals did not create nor authorize the creation of a lien upon real property for water rents. Since the municipality concerned here is a village, Section 3958, General Code, has no direct application to the case at bar; but the construction placed upon that section by this court is authority upon the nature of assessments for utility charges under Section 4361. The two sections' differ in that Section 4361 contains an additional provision for.certifying the charges for utility rents to the county auditor “to be placed on the duplicate and collected as other village taxes.”
 

 What then is the effect of this additional provision?
 

 There is a general duplicate of real and public utility property which is required to be delivered to the county treasurer. Section 2583, General Code. Provision is also made for two duplicates of unpaid taxes other than upon real estate, .one of which is to be delivered to the treasurer and the other, from which is eliminated the names of all persons whose total liability for taxes is' less than $100, is to be delivered to the recorder and “the same shall constitute a notice of a lien and operate, as of the date of delivery thereof, as a lien on the lands
 
 *' * *
 
 of each person named therein, having such real estate in s'uch county”; but such lien shall not be valid as against a mortgagee whose rights have attached prior to the delivery of the duplicate. Section’5694, General Code.
 

 Section 5671, General Code, provides in part: “Taxes charged on any tax duplicate, other than those upon real estate specifically as such, shall be a lien on real property of the person charged therewith from the date of the filing of notice of such lien, as provided by law.”
 

 
 *191
 
 This latter provision evidently refers to the duplicate delivered to the recorder and applies to delinquent personal tax items of $100 or more. Personal taxes in a total amount of less than $100 do not become a lien on land upon delivery of unpaid personal tax duplicate to the treasurer.
 

 In the instant case the record does not show that the utility charges were certified against any particular property, but discloses that they were certified only as a personal charge against the owners. It does not even appear on what duplicate they were placed but only that they are on the “auditor’s duplicate.”
 

 Under these statutory provisions' a lien could have been secured in two ways: (1) By certifying the charges against the real property supplied with water and light, placing such charges on the real property duplicate against such property and delivering the duplicate to the county treasurer; thus the charges would be made collectible, like taxes on the real estate by enforcement of the lien or (2) by certifying the charges generally and causing them, when $100 or more in amount, to be placed on the delinquent personal property duplicate and delivering it to the county recorder.
 

 Since neither of these steps was taken in the instant case, no lien was created.
 

 Even if steps had been taken which created a valid lien, such lien would not arise until the charges were certified and entered on the duplicate and the duplicate was delivered to the proper officer. The lien, if any had been created, would therefore have been subsequent to the lien of the mortgage. However, since the proceeds of sale were insufficient to satisfy real property taxes and the mortgage debt, such a subsequent lien would be of no avail on distribution.
 

 
 *192
 
 The judgments of the courts below will he reversed and final judgment- rendered for appellant.
 

 Judgment reversed cmd final judgment for appellant.
 

 Weygandt, C. J., Matthias, Day, Zimmerman and Gorman, JJ., concur.