IN RE TESTAMENTARY TRUST created in last will and testament of HARRY T. SHURTZ.

Application for order by MARK EISCHEID, trustee, appellee and cross-appellant, AUDREY BENING et al., objectors-appellants.

No. 47825.

(Reported in 46 N.W.2d 559)

MARCH 6, 1951.

Keenan, Clovis & Harris, of Shenandoah, for appellants Beatrice Gass and Audrey Bening.

Ferguson & Ferguson, of Shenandoah, for appellee and cross-appellant, Mark Eischeid, as trustee.

GARFIELD, J.—This is a controversy between a trustee and, apparently, his sister who receive the income from the trust, on one side, and two owners of remainder interests (one sixth to each) as to whether certain expenditures of the trustee are chargeable to principal, as the trustee maintains, or to income, as the remaindermen contend. The trial court prorated most of the expenditures between principal and income. Both trustee and remaindermen have appealed.

The trust consists of some $45,000 in property and money and is to be administered until the death of testator's widow with the net income divided equally between the trustee and his sister. At the termination of the trust the property is to go one third to two stepdaughters (one sixth to each), one third to the trustee and one third to the latter's sister, a niece of testator. The widow, still alive, elected to refuse to take under the will and to take her statutory distributive share.

After administering the trust nearly six years the trustee applied to the probate court for authority to charge seven different expenditures to the principal of the trust. The stepdaughters objected to the application. We call them objectors. The matter was heard upon stipulated facts which admit most of the fact statements in the application. The trial court prorated most of the items between income and principal on the theory the recipients of each benefited proportionately from the expenditures. Upon this appeal the objectors contend all the expenditures are chargeable to income and the trustee maintains substantially all are chargeable to principal.

The important provision of the will is that the trustee "shall pay out of the income from my property all taxes and assessments thereon and all other expenses incident to the ownership of such property, including any expenses he may have as trustee. * * * net income shall be divided equally between my said trustee and my niece * * *."

The will also states that in the event the trust property cannot be divided in kind the trustee may convert it into cash for the purpose of making division. All the expenses of such proceedings are to be paid by the trustee "out of my estate and the net amount remaining to be divided by him, as hereinbefore provided."

I. Under court order the trustee furnished a bond of $40,000 upon which he paid premiums of $1406. The trial court held this expense was payable out of income because of the language of the will "including any expenses he may have as trustee."

The trustee argues that since the will does not relieve him from furnishing bond and the bond was required by sections 633.32, 633.43, Code, 1946, the provisions of the will are not controlling and liability for the bond expense should be determined as if there were no will. It is asserted that in the absence of a will this expense would be prorated between income and principal. Of course failure of the will to refer specifically to bond premiums does not aid the trustee if such expense is of the kind the will directs paid from income.

The trustee also contends the will directs payment from income only of taxes and assessments and other expenses incident to ownership of the property, including such expenses of the trustee as are incident to such ownership. It is argued bond premiums are therefore not payable from income. The trial court apparently concluded legitimate expenses of the trustee, as for bond premiums, are by the terms of the will included in "expenses incident to the ownership of such property" which are payable from income. We think this a proper construction of the will and are not disposed to interfere with it. There is nothing in In re Estate of Paulson, 221 Iowa 706, 712, 266 N.W. 563, cited by the trustee, inconsistent with our conclusion.

While of course we are not called upon to decide to whom the bond premiums should be charged if it were not for the terms of the will, we may observe they are usually considered as payable from the income of the trust as part of the ordinary expenses of administering it. Parkhurst v. Ginn, 228 Mass. 159, 170, 117 N.E. 202, 206, Ann. Cas. 1918E 982, 987; Butler v. Builders Trust Co., 203 Minn. 555, 560, 282 N.W. 462, 466, 124 A. L. R. 1178, 1182, and annotation 1183, 1205; 33 Am. Jur., Life Estates, Remainders, etc., section 430.

II. Shortly before this application was made the trustee and his sister filed written request that the trustee be relieved from furnishing bond to protect either of them, that the bond be reduced in amount and made for the protection only of the step-

daughters. It was stipulated the bond should be reduced to $10,000 and be for the protection only of the interests of the stepdaughters who contended, however, premiums on the new bond should be payable from income. The trial court ordered the bond reduced in accordance with the stipulation and the payment of premiums thereon from income as an expense of the trustee within the terms of the will.

The trustee contends that since the reduced bond is for the protection of the interests of the stepdaughters the cost thereof is chargeable to such interests. Reliance is placed upon our decision in In re Estate of Smith, 165 Iowa 614, 623, 146 N.W. 836, that attorney fees in a will contest should be borne by those for whose benefit the expense was incurred. See also In re Estate of Hartman, 233 Iowa 405, 412, 9 N.W.2d 359, 363, 364, and citations; In re Estate of Swanson, 240 Iowa 1011, 1015, 38 N.W.2d 652, 654.

The trustee also cites Buder v. Franz, 8 Cir., Mo., 27 F.2d 101, 114, 115, which approves a decree directing cost of a trustee's bond for the protection of certain remainder interests charged to the obligees. This part of the decree was not in conflict with the terms of the trust.

We are not disposed to interfere with the trial court's decision that the cost of the reduced bond be paid from income. Code sections 633.32 and 633.43 require the bond and the remainder interests are entitled to its protection. While the trustee and his sister might waive protection of the bond as to their own interests this should not cause premiums on the new bond to be chargeable to the objectors. Under the circumstances, cost of the new bond is as much an expense of the trustee which the will directs paid from income as were the premiums on the larger bond.

█ III. The trustee contends that because certain lots have always been vacant and unproductive $142 of taxes thereon should be charged to principal. While taxes are ordinarily paid from income, if the property is unproductive and yields no income taxes are usually held payable from principal *unless otherwise provided by the terms of the trust.* See Sheffield v. Cooke, 39 R. I. 217, 98 A. 161, Ann. Cas. 1918E 961, 971; Spencer v. Spencer, 219 N. Y. 459, 114 N.E. 849, Ann. Cas. 1918E 943, and

note 947, 952; Restatement, Trusts, section 233, Comments e, m, pages 684, 689, 690; 65 C. J., Trusts, section 582; 31 C. J. S., Estates, section 47, page 62; 33 Am. Jur., Life Estates, Remainders, etc., sections 433, 440.

Here the will plainly directs payment out of income of *all* taxes. Unproductive property is not excepted. The trial court was therefore clearly right in charging these taxes to income.

■ IV. The city of Shenandoah levied special assessments totaling $460.20 against three lots for curb and gutter, rock surfacing the street and resurfacing paving. The trial court prorated this expense between income and principal, charging $210.25 to the former and $249.95 to the latter, apparently on the theory the respective owners of the two interests were benefited by the improvements in that proportion.

Where an assessment is levied for a public improvement of permanent nature and the terms of the trust are silent with respect thereto it is usually charged to the principal of the trust or apportioned between principal and income, depending to a large extent on the circumstances of the particular case and especially the probable duration of the improvement as compared with the probable duration of the life tenancy. See Restatement, Trusts, section 233, Comment j, Comment k, illustration 5; 31 C. J. S., Estates, section 47, pages 62, 63; 33 Am. Jur., Life Estates, Remainders, etc., section 460; Crowell v. Seelbinder, 185 Ark. 769, 49 S.W.2d 389, 83 A. L. R. 789, 792, and annotation 793.

Cooper v. Barton, 208 Iowa 447, 449, 226 N.W. 70, holds a special assessment for a permanent public improvement (drainage) should be borne ratably between the life tenant and remaindermen in proportion to the benefit to each and that under this rule the life tenant should pay the interest on the assessment and the remaindermen the principal. There the terms of the trust were silent as to who should bear the assessment.

We think this will plainly directs payment of these assessments from income and the trial court should have held they were so payable. As stated, the will provides the trustee "shall pay out of the income from my property all taxes and assessments thereon * * *." Unless the words "and assessments" in-

clude the assessments here involved they have no meaning. Of course meaning and effect should be given the quoted words if fairly possible.

■ There is a distinction between "taxes" and "assessments." A tax is a charge to pay the cost of government without regard to special benefits conferred. The word "assessment" in the field of taxation is used in two senses: (1) the method of imposing a tax and (2) a special tax to pay the cost of a local improvement according to the supposed benefits therefrom. When used in the first sense, the term used is "the assessment of taxes." When used in the second sense only the word "assessment" is used or the words "special assessment." The term is widely used and understood in the second of these senses.

Among the numerous authorities in support of one or more of the statements just made are Bennett v. Greenwalt, 226 Iowa 1113, 1133, 1134, 286 N.W. 722; Cornelius v. Kromminga, 179 Iowa 712, 715, 161 N.W. 625, 626; C. A. Wagner Constr. Co. v. City of Sioux Falls, 71 S. D. 587, 27 N.W.2d 916, 918; Home Owners Loan Corp. v. Tyson, 133 Ohio St. 184, 12 N.E.2d 478, 480, 481; City of Milwaukee v. Taylor, 229 Wis. 328, 282 N.W. 448, 454; Weeks v. City of Milwaukee, 10 Wis. 242, 260, 261; Evans v. Ockershausen, 69 App. D. C. 285, 100 F.2d 695, 128 A. L. R. 177, 192.

It is obvious the words in the will "and assessments" are not used as descriptive of the process or method of taxation. It is not *the assessment* of a general tax but the tax itself that is to be paid by the property owner. Special assessments on property, however, are to be paid by the owner. To give the quoted words any meaning whatever it must be held they refer to something not included in the preceding word "taxes."

Our conclusion that these assessments are, under the terms of the will, payable from income finds support in C. A. Wagner Constr. Co. v. City of Sioux Falls, supra, last above; Standard Oil Co. of Louisiana v. Joy, 179 La. 151, 153 So. 675; Stephens' Executors v. Milnor, 24 N. J. Eq. 358, 373.

■■ V. At the beginning of the trust the furnace in each of two dwellings was completely worn out beyond repair, so the houses were untenantable and unproductive of revenue. To make them tenantable and preserve their value *for the bene-*

*ficiaries of the principal* of the trust, the trustee replaced each furnace with a new one costing $300. The above facts were stipulated. The trial court prorated the cost of the furnaces between income and principal (approximately one half to each) apparently on the theory the life expectancy of the widow was approximately half the probable duration of the new furnaces.

The trustee contends the cost of the new furnaces is all payable from principal. The objectors argue it is all chargeable to income because the will directs payment from income of "all other expenses incident to the ownership of such property * * *." While we agree with the trial court that the cost of the new furnaces is not wholly payable from income under the terms of the trust, we think under the stipulated facts it should all be charged to principal.

The question of who should bear the cost of the furnaces, as well as the remaining items, considered in Division VI hereof, is answered by In re Estate of Dolch, 237 Iowa 1065, 1067, 24 N.W.2d 447, and the authorities there cited. There the will directed the executor "to pay the 'reasonable and necessary costs of maintenance [of the real estate] therefrom [from the income] * * *.'" We held this direction did not differ from the general rule that ordinary repairs should be made by the life tenant, or by the trustee and charged to income of the trust, but quote with approval from Restatement, Trusts, section 233, comment i: "The cost of putting into tenantable repair premises which were not in such repair when received by the trustee * * * is payable out of principal; but the cost of thereafter keeping the premises in repair is payable out of income."

As pointed out in the Dolch opinion, similar statements appear in 33 Am. Jur., Life Estates, Remainders, etc., section 454 (not 455), page 983; 31 C. J. S., Estates, section 44; annotation 128 A. L. R. 199, 252; and decisions cited in the Dolch case. Annotation 175 A. L. R. 1434, 1450, supplementing that in 128 A. L. R. 199, states, "The principle that where trust property was in a state of disrepair at the time it was received by the trustee, the cost of putting it into tenantable or salable repair is to be borne by the principal of the trust has been recognized or applied in several recent decisions."

Savings Inv. & Tr. Co. v. Little, 135 N. J. Eq. 546, 551, 39 A.2d 392, 396, from which the Dolch opinion quotes, involves the cost of replacing a furnace that was old, rusted and dangerous at testator's death. See also Evans v. Ockershausen, supra, 69 App. D. C. 285, 100 F.2d 695, 128 A. L. R. 177, where the cost of refrigerators in apartments in order to make them rentable is held payable from principal.

We attach little importance to the fact the only express provision in the will for payment of expenses "out of my estate" is the one heretofore quoted regarding expenses of proceedings to convert the property into cash for the purpose of making division at the termination of the trust. Such expense would be payable out of principal in the absence of this provision. Restatement, Trusts, section 233, Comment f. As stated in In. re Estate of Dolch, supra, 237 Iowa 1065, 1069, 24 N.W.2d 447, 449, the will does not prohibit such an expenditure from principal as that here involved.

VI. The remaining items of expenditure are $85.40 for a new water pipe leading to a dwelling and the undetermined cost of installing in another dwelling an indoor toilet with sewer connections to replace an outdoor toilet. Both improvements were ordered by the city.

It was stipulated that at the beginning of the trust the water line which was replaced was worn out and antiquated and the new pipe was installed to make the premises tenantable, to preserve their value for the beneficiaries of the principal of the trust and to comply with the city's order; also that there was only an outdoor toilet for the other dwelling when the trustee was appointed and the indoor toilet must be installed to comply with municipal regulations and Code section 368.54. The trial court prorated the cost of each of these two improvements between income and principal in the ratio that the life expectancy of the widow bears to the probable duration of each improvement.

We think the cost of the water pipe and the indoor toilet are payable from principal. This expense was made necessary by the worn-out condition of the old pipe and the existence of the outdoor toilet at the commencement of the trust and by the regulations of the city. They were necessary to render the

premises tenantable. Our holding in Division V is therefore applicable here.

That the improvements were required by the city pursuant to law is an added reason why the cost is chargeable to principal. See Greene v. Greene, 19 R. I. 619, 626, 35 A. 1042, 1045, 35 L. R. A. 790, 793, cited with approval in In re Estate of Dolch, supra, 237 Iowa 1065, 1068, 24 N.W.2d 447, 449. The Greene case holds outlays for indoor water closets and connections therewith chargeable to principal, "especially in view of the fact that these outlays have been rendered necessary to a considerable extent by municipal regulations, are not to be regarded as outlays for repairs, but rather as for improvements * * *."

65 C. J., Trusts, section 580, page 715, states:

"However, the corpus or principal of the trust estate, and not the income, is chargeable with the expense of improvements or repairs made necessary by municipal regulations, or of extraordinary repairs * * * which are necessary for the preservation of the property, as by reason of * * * untenantable condition * * *."

Hooker v. Goodwin, 91 Conn. 463, 471, 99 A. 1059, 1062, Ann. Cas. 1918D 1159, 1162, holds cost of a bathroom is a reasonable expense for a trustee to incur out of principal.

Upon each appeal the cause is affirmed in part, reversed in part, and remanded for a final order in accordance with this opinion. The costs of this appeal are equally divided between income from the trust and the objectors. See In re Estate of Hartman, supra, 233 Iowa 405, 412, 9 N.W.2d 359, 363, 364, and citations.—Affirmed in part, reversed in part, and remanded upon each appeal.

All JUSTICES concur except MANTZ, J., not sitting.