**HOME BUILDERS ASSOCIATION
OF GREATER DES MOINES,**
Appellee,

v.

**CITY OF WEST DES MOINES,**
Appellant.

Nos. 99–2025, 00–0351.

Supreme Court of Iowa.

May 8, 2002.

As Amended May 31, 2002.

Ivan T. Webber of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellant.

Brent R. Appel of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellee.

William F. Sueppel of Meardon, Sueppel & Downer, P.L.C., of Iowa City, for amicus curiae, Iowa League of Cities.

TERNUS, Justice.

The appellee, Home Builders Association of Greater Des Moines, challenges the collection of fees by the appellant, City of West Des Moines, Iowa, pursuant to the City's Mandatory Park Dedication Fee Ordinance.[1] The challenged fees are imposed on land developers and builders and are used by the City to pay for its neighborhood park system. The trial court declared that the fees are an illegal tax and enjoined the City from collecting such fees. The court also ruled that the ordinance violated the Takings Clause of the United States Constitution, the Equal Protection Clause of the Constitution, and substantive due process. Based on the constitutional violations, the court held that the plaintiff was entitled to recover its attorney fees under 42 U.S.C. §§ 1983 and 1988.

The City has appealed the trial court's decision granting declaratory relief, injunctive relief, and attorney fees, challenging its rulings on each claim asserted by the plaintiff. We review the court's

---

1. Three entities, The Oaks Development Company, Country Club Ridge, L.C., and Midland Builders, L.C., intervened in this action. These parties had in the past and will in the future pay fees required by the City's ordinance. Since the interests of the intervenors correspond to that of the Home Builders Association, all references to the plaintiff include the intervenors.

ruling on the state law claim that the fee was an illegal tax for correction of errors of law. *See* Iowa R.App. P. 6.4. Under this scope of review, we are bound by the trial court's findings of fact if they are supported by substantial evidence. *See Vincent v. Four M Paper Corp.*, 589 N.W.2d 55, 59 (Iowa 1999). Our review of the court's rulings on the plaintiff's constitutional claims is de novo. *See Blumenthal Inv. Trusts v. City of West Des Moines*, 636 N.W.2d 255, 260 (Iowa 2001).

### I. *Relevant Facts.*

The City of West Des Moines is a municipal corporation organized and existing under the laws of the State of Iowa. In 1985 the City enacted Ordinance No. 777, the Mandatory Park Dedication Fee Ordinance, in an effort to ensure adequate funds for the purchase of suitable parklands to serve developing areas of the City. This ordinance, applicable citywide, provided for the imposition of a fee on developers and residential builders. Specifically, whenever a parcel of land within the City was "subdivided and presented to the City for residential development purposes, the developer [was] required to make a fee payment of $100.00 per acre."

In addition to the subdivision fee, the ordinance also imposed a fee on residential building permits. Upon application for a residential building permit, a builder was required to make the following payments under the ordinance: $200 per unit for a detached, single-family home; $150 per unit for an attached, single-family home; and $75 per apartment unit. In the case of private developments that provide facilities or amenities such as swimming pools, court game facilities and playground equipment for common use without a charge to residents in the development, the homebuilder was entitled to a credit not to exceed twenty-five percent of the

fee otherwise required under the ordinance. The ordinance also provided that if, within a twelve-month period, "additions, improvements, alterations or repairs in excess of 50% of the current assessed fair market value" were made to a residence, a fee for park development would be collected. In a 1995 amendment to the ordinance, all fees were doubled.

The fees generated by the ordinance are deposited in a sub-fund of the City's general fund and, according to the ordinance, are to "be used exclusively for park site acquisition and/or physical improvement of the Neighborhood Park System." The "neighborhood park system" is defined under the ordinance as "a network of active and passive recreation areas including neighborhood parks, neighborhood mini parks and greenbelts which are designed and located to serve a surrounding neighborhood." Funds collected under the ordinance are used for land acquisition and initial site development, such as water hookup, seeding and grading. Any additional improvements such as shelters, playgrounds and other amenities are paid with general fund monies.

For purposes of planning, the City is divided into park districts. Although the ordinance does not prohibit the use of fees collected in one district from being spent on land and facilities in another district, in practice, funds have been segregated by district and the monies spent only within that district.

The City's master park plan contemplates each neighborhood park serving an area within a radius of ¼ to ½ mile in the newer areas of town and ¾ of a mile in established neighborhoods. Nonetheless, parks in new developments are often larger than the City's standard of 2.5 acres per 1000 population in order to accommodate larger facilities that will compensate for

the deficiency of parks in older areas of the City.

Although fees have been collected throughout the City, no funds have been expended in two park districts. In addition, no park facilities are planned for a development known as Glen Oaks, even though the fees required by the ordinance have been assessed on residences in that neighborhood.

We turn now to the issues raised in this appeal.

## II. *Is the Fee an Illegal Tax?*

The plaintiff claims that the parks fee is an illegal tax. The City asserts that the fee is a valid impact fee that is authorized under the City's broad home-rule power.

■ An impact fee is generally a monetary payment assessed as a condition of the issuance of a building permit or plat approval. *Country Joe, Inc. v. City of Eagan,* 560 N.W.2d 681, 685 (Minn.1997). It is typically used to finance " 'large-scale, off-site public facilities and services necessary to serve new development.' " *Id.* (citation omitted). Courts concluding that such fees are valid have usually required that the fee be " 'in an amount which is proportionate to the need for the public facilities generated by [the] new development.' " *Id.* (citation omitted); *accord Hollywood, Inc. v. Broward County,* 431 So.2d 606, 611 (Fla.Dist.Ct.App.1983). Such fees "have been lauded by local governments in recent years as a welcome means to 'shift a portion of the cost of providing capital facilities to serve new growth from the general tax base to the new development generating the demand for the facilities.' " *Country Joe, Inc.,* 560 N.W.2d at 684–85 (citation omitted).

Although some states have enabling legislation authorizing local government to charge impact fees, *e.g., Home Builders Ass'n v. City of Scottsdale,* 187 Ariz. 479, 930 P.2d 993, 994 (1997); *N. Ill. Home Builders Ass'n, Inc. v. County of DuPage,* 165 Ill.2d 25, 208 Ill.Dec. 328, 649 N.E.2d 384, 387 (1995), Iowa does not. Therefore, the City must justify the parks fee at issue here as an exercise of its police power. We turn now to a review of Iowa law with respect to the police power of municipalities and the scope of their taxing authority.

### A. *Applicable legal principles.*

■ In 1968 the State of Iowa amended its constitution to give municipalities home rule authority. *See* Iowa Const. art. III, § 38A. Under the home rule amendment, a city has the "power and authority, not inconsistent with the laws of the general assembly, to determine [its] local affairs and government, *except that [it does] not have power to levy any tax unless expressly authorized by the general assembly.*" *Id.* (emphasis added); *see also* Iowa Code §§ 364.2(2) (1997) ("A city may exercise its general powers subject only to limitations expressly imposed by a state or city law."), .3(4) ("A city may not levy a tax unless specifically authorized by a state law."). The principle of home rule authority is further clarified in the Iowa Code, which provides:

> A city may, except as expressly limited by the Constitution, and if not inconsistent with the laws of the general assembly, exercise any power and perform any function it deems appropriate ... to preserve and improve the peace, safety, health, welfare, comfort, and convenience of its residents.

*Id.* § 364.1. An action taken pursuant to this provision is an exercise of a city's police power. *See Kelley v. Story County Sheriff,* 611 N.W.2d 475, 481 (Iowa 2000); *Gravert v. Nebergall,* 539 N.W.2d 184, 186 (Iowa 1995). To summarize the scope of home rule authority in Iowa, a city has

broad police powers, but it cannot impose taxes without express authorization from the legislature.

The City argues that its parks fee is an appropriate incident of the exercise of its police power to promote the public's health, comfort and welfare. The plaintiff does not challenge the City's authority to *build* parks; clearly, parks improve the welfare and comfort of city residents. Rather, the plaintiff claims that the *financing* for parks must come from the City's general fund and not through the imposition of an unauthorized tax on developers and homebuilders. *See generally* Iowa Code § 384.3 (requiring, in general, that "[a]ll moneys received for city government purposes from taxes and other sources must be credited to the general fund of the city"). In order to resolve this dispute, we must determine the nature of the parks fee. We begin by examining the differences between taxes and fees.

This court has defined a tax as "a charge to pay the cost of government without regard to special benefits conferred." *In re Shurtz's Will*, 242 Iowa 448, 454, 46 N.W.2d 559, 562 (1951); *accord Newman v. City of Indianola*, 232 N.W.2d 568, 573 (Iowa 1975). In other words, taxes are for the primary purpose of raising revenue. *See City of Hawarden v. US W. Communications, Inc.*, 590 N.W.2d 504, 507 (Iowa 1999). If the fee at issue here is determined to be a tax, it would fall within the category of an excise tax—a tax imposed on a transaction or as a condition to the exercise of a privilege. *See Waters Landing Ltd. P'ship v. Montgomery County*, 337 Md. 15, 650 A.2d 712, 716–17 (1994) (holding that development impact tax was an excise tax, not a property tax or a personal property tax); 9 Beth A. Buday & Julie Rozwadowski, *The Law of Municipal Corporations* § 26.18, at 50 (3d ed., rev.vol.1995) (stating that a tax imposed as a condition of licensure is an excise tax, not a property tax) [hereinafter *"The Law of Municipal Corporations"*]; *see also Cedar Valley Leasing v. Iowa Dep't of Revenue*, 274 N.W.2d 357, 361 (Iowa 1979) (defining excise tax as a tax on a transaction or the privilege to conduct the transaction); *Black's Law Dictionary* 563 (6th ed.1990) (defining "excise tax" as "[a] tax imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege"). That is because, notwithstanding its relationship to real property, the fee is transaction based; it is made a condition of obtaining plat approval or a building permit. *See Waters Landing Ltd. P'ship*, 650 A.2d at 717; 71 Am.Jur.2d *State and Local Taxation* § 22, at 318 (2000) (stating that an excise tax "does not become a property tax because it is proportioned in amount to the value of the property used in connection with the occupation, privilege, or act which is taxed").[2]

---

2. Even if we were to classify the fee at issue as a tax on property, neither of the two types of property taxing authority given to local government by the legislature applies in this case. First, cities may levy taxes "on all taxable property within the city limits, for all city government purposes." Iowa Code § 384.1; *see id.* § 384.12. As already noted, the fee at issue here is not levied on property per se but is made a condition of plat approval or a prerequisite to the issuance of a building permit. Therefore, it is not a general property tax authorized by section 384.1.

Secondly, cities may impose a special tax assessment on property for "the cost of construction and repair of public improvements." *Id.* § 384.38(1); *see also id.* § 384.61 (stating that special assessments against property must be "in accordance with the special benefits conferred upon the property"). *See generally Newman*, 232 N.W.2d at 573–74 (stating the imposition of a special assessment is considered an exercise of a city's taxing authority). Although special assessments may be made against property benefited by a "public improvement," parks are not included in the

■ We find no legislative authority for cities to impose an excise tax on developers or builders. Amicus curiae, the Iowa League of Cities, argues that the City's authority to charge a parks fee can be derived from its statutory authority to condition plat approval on the installation of public improvements. *See* Iowa Code § 354.8 (allowing city to "requir[e] the installation of public improvements in conjunction with approval of a subdivision"); *see also Blumenthal Inv. Trusts,* 636 N.W.2d at 266. Even if we assume that the term "public improvements" as used in section 354.8 encompasses parks, the League's argument fails. The League overlooks the fact that the city ordinance at issue here does not require a developer to construct a park; it imposes a monetary fee. This distinction is significant under Iowa home rule principles because if the fee is a tax, there must be express legislative authority for imposing the tax. Although the League advances practical and sound reasons for allowing a City to require a monetary exaction from a developer in lieu of a dedication of parkland, the decision to extend that power to local government is for the legislature, not this court. Clearly, the legislature did not do so in section 354.8; that statute does not expressly permit local government to require payment of a tax as a condition of subdivision approval. Consequently, if the parks fee is a tax, it is not authorized by section 354.8.

■ Having examined the sources and scope of the City's taxing authority, we now examine its authority to charge fees under its police power. Before municipalities had home rule authority, this court had interpreted the regulatory authority granted by statute to cities to include the power to charge a fee to meet the expenses of the city in exercising its regulatory authority. *Felt v. City of Des Moines,* 247 Iowa 1269, 1273, 78 N.W.2d 857, 859 (1956) (holding that fee charged to cover city's expenses in exercising its statutory authority was "a proper incident to the authority granted under the statute"); *see City of Pella v. Fowler,* 215 Iowa 90, 98, 244 N.W. 734, 738 (1932); *Solberg v. Davenport,* 211 Iowa 612, 617, 232 N.W. 477, 480 (1930). The same principle applies with respect to a city's home rule authority: a city may charge a fee to cover its administrative expenses in exercising its police power. Thus, the reasonable cost of inspecting, licensing, supervising, or otherwise regulating an activity may be imposed on those engaging in the activity in the form of a license fee, permit fee, or franchise fee. *See City of Hawarden,* 590 N.W.2d at 506–07. In addition to regulatory fees, a municipality may charge a citizen when it provides a service to that citizen. *See Newman,* 232 N.W.2d at 573.

■ The rather narrow range of fees permitted by our cases is consistent with our long-standing definition of a tax. As noted above, a tax is "a charge to pay the cost of government *without regard to special benefits conferred.*" *In re Shurtz's Will,* 242 Iowa at 454, 46 N.W.2d at 562 (emphasis added). Consistent with this definition, the regulatory and service fees permitted under Iowa law are based on a special benefit conferred on the person paying the fee. In the regulatory context, fees enable the government to administer a particular activity or occupation to the peculiar benefit of those engaged in that activity or occupation. Therefore, fees de-

extensive statutory definition of "public improvement." *See* Iowa Code § 384.37(19) (defining "public improvement" to include, among other things, sewers, sidewalks, streets, plazas and utility connections). Therefore, the parks fee is not authorized as a special assessment.

signed to cover the administrative expense of regulating a particular activity, occupation, or transaction are not taxes. Similarly, when one pays for a service such as admission to the municipal swimming pool, one has received a special benefit—admission to the pool—and so the admission fee is not a tax.

In summary, because the fee at issue here does not fall within the authorized taxing authority of the City, it is proper only if it qualifies as a regulatory fee or service fee. To qualify as one of these permissible fees, the parks fee must cover the administrative expenses of the city in regulating residential development or be compensation for a specific benefit or service conferred on those paying the fee. We now turn to an analysis of whether the parks fee is an unauthorized tax or a permissible fee.

### B. *Application of law to facts.*

■ We first consider whether the parks fee is a regulatory fee. We do not think it is. The fees charged under the city ordinance are not based on the cost of regulating development or issuing building permits, but rather are based on the impact the development of the property owner's land will have on the public infrastructure. Because the fee has no relation to the expenses of the city in approving subdivision plats or building permits, it cannot be justified as an incident of the exercise of its police powers. *See City of Hawarden,* 590 N.W.2d at 507 (distinguishing a fee from a tax by focusing on whether the fee is reasonably related to and does not exceed the city's necessary and probable administrative and regulatory expenses); *Solberg,* 211 Iowa at 617, 232 N.W. at 480 (stating that where charge "is imposed in the exercise of the police power, the amount which may be exacted may include and must be limited *and measured by* the

necessary or probable expense of issuing the license and such inspection, regulation, and supervision as . . . may be lawful and necessary" (emphasis added)); *City of Pella,* 215 Iowa at 98, 244 N.W. at 738 (holding that franchise fee calculated as a percentage of the franchisee's gross earnings was not proper because the exaction was not "based on the cost of regulation or supervision"); 9 *The Law of Municipal Corporations* § 26.15, at 42 (stating that fee permitted as an incident of police regulatory power is "only as will legitimately assist in regulation and will not exceed the necessary or probable expense of issuing the license and of inspecting and regulating the business or other subject that it covers"); *see also E. Diversified Props., Inc. v. Montgomery County,* 319 Md. 45, 570 A.2d 850, 855 (1990) (holding that impact fee was not a regulatory fee where it was not charged to "defray expenses of the development regulatory process").

■ The City attempts to justify its parks fee on the basis that the monies raised are spent solely on neighborhood parks to the benefit of developers and homebuilders whose activities generate the need for such facilities. We do not think the fee can be supported on this basis either. First of all, a neighborhood park is not provided specifically to the residents of a development or even the neighborhood in which it is located. A neighborhood park is available for general public use and benefits the entire community. *See Wielepski v. Harford County,* 98 Md.App. 721, 635 A.2d 43, 47 (1994) (noting road improvements benefit the public in general, so fee charged to bordering property to pay for improvements cannot be justified on basis that improvements benefit that particular property), *vacated on other grounds by Harford County v. Wielepski,* 336 Md. 281, 648 A.2d 192, 193 (1994); *cf. Milton O. & Phyllis A. Thorson Revocable Estate Trust*

*v. City of West Des Moines*, 531 N.W.2d 647, 650 (Iowa Ct.App.1995) (noting in the context of special assessment that public improvement usually confers special benefits to property owners and a general benefit to the city and its residents). Therefore, if the fee is to be justified under the City's police power as conferring a special benefit, it must provide some benefit to nearby property beyond the mere existence of the park. *See E. Diversified Props., Inc.*, 570 A.2d at 855 (noting that "[t]he relationship between the fee and the benefit to the property owner necessary for the measure to be regulatory in effect is not just that the property owner receive some benefit from the improvement"); *cf. Goodell v. City of Clinton*, 193 N.W.2d 91, 95 (Iowa 1971) (holding in special assessment case that benefits accruing to the public at large are not special benefits that may be assessed against individual properties).

We think one could hypothesize that a *special* benefit is conferred by the construction of a neighborhood park in the form of increased property values or salability resulting from the park's proximity. *Cf. Milton O. & Phyllis A. Thorson Revocable Estate Trust*, 531 N.W.2d. at 650 (noting distinction between general community benefit and special benefit of public improvement in context of special assessment). But even if we assume that developers and homebuilders who pay the parks fee receive a special, economic benefit from the building of neighborhood parks, we still cannot sustain the fee as an exercise of the City's police power. That is because the fee is not premised on the special benefits bestowed on developers and builders nor limited to the value of those special benefits. Rather, the fee is based on the cost of building the neighborhood parks, an expense representing the general benefit to the community at large.

Therefore, the parks fee is not based on special benefits conferred on the property owners so as to fall outside the definition of a tax. *See E. Diversified Props., Inc.*, 570 A.2d at 855 (holding that impact fee was not a regulatory fee where it was not based on the "service provided to the property owner"); *Haugen v. Gleason*, 226 Or. 99, 359 P.2d 108, 111 (1961) (holding fee charged as condition of plat approval was an illegal tax because the fees were not required to be used for "the direct benefit of the regulated subdivision"). To conclude otherwise would in essence permit the City to assess property for a public improvement without regard to the limitations on its taxing authority under chapter 384. *See generally* 9 *The Law of Municipal Corporations* § 26.18, at 50 (noting that unless it is shown that the fee collected is devoted to the cost of regulation, "there would be nothing to distinguish a revenue ordinance from a police ordinance").

In reaching our conclusion that the parks fee cannot be sustained under the City's police power, we have considered the cases cited by the City from other jurisdictions wherein courts have upheld impact fees similar to the fee before us. Notwithstanding those cases, Iowa statutory and case law is clear and well established with respect to the powers of local government. The home rule amendment, while giving local government broad authority to promote the peace, safety, health, welfare, comfort, and convenience of its residents, did not bestow such broad powers with respect to the financing of local government activities. A municipality may charge a fee to cover the cost of regulation or the cost of providing a service, but beyond that the municipality must have specific authorization from the legislature to raise revenue for general city purposes.

In contrast, in the cases upon which the City relies, the state legislatures had either adopted an enabling statute permitting local government to charge impact fees, or the taxing power of local government was not as severely circumscribed under state law as it is in Iowa. *E.g., Home Builders Ass'n,* 930 P.2d at 995 (state statute allowed impact fee); *N. Ill. Home Builders Ass'n, Inc.,* 649 N.E.2d at 30–31 (same); *McCarthy v. City of Leawood,* 257 Kan. 566, 894 P.2d 836, 839 (1995) (Kansas home rule provision granted cities power to levy "taxes, excises, fees, charges and other exactions" unless prohibited by legislative enactment). Although in a few cases the statutory framework was similar to that present here, *e.g., Coulter v. City of Rawlins,* 662 P.2d 888 (Wyo.1983), we do not find such cases persuasive. It is our belief the courts in those cases erroneously implied local authority to impose a revenue-raising impact fee as an incident of local government's regulatory powers. *See* 8 Eugene McQuillin, *The Law of Municipal Corporations* § 25.118.50, at 384 (3d ed., rev.vol.2000) (stating "in the absence of legislative intent, municipalities cannot depart from traditionally authorized methods of financing public facilities so as to allocate the costs of substantial public projects among new developments on the basis of their anticipated impact"). In essence, they have recognized an implied power to tax, a notion antithetical to Iowa's home rule principles. *See* Iowa Code § 364.3(4) ("A city may not levy a tax unless specifically authorized by a state law."); *accord Haugen,* 359 P.2d at 111 (noting that "[t]he power to tax is never inferred," nor is it inherent in local government). In summary, the cases in which courts have upheld impact fees are either distinguishable or unconvincing. Therefore, we decline to follow them.

## C. Conclusion.

We conclude the parks fee is a tax because it is "a charge to pay the cost of government without regard to special benefits conferred." *In re Shurtz's Will,* 242 Iowa at 454, 46 N.W.2d at 562. The fee is not compensation for a direct service to the developer or homebuilder paying the fee, nor is it intended to cover the administrative costs of the City. To the contrary the fee is, pure and simple, a measure to raise revenue for public infrastructure. *See Idaho Bldg. Contractors Ass'n v. City of Coeur d'Alene,* 126 Idaho 740, 890 P.2d 326, 330 (1995) (holding that an impact fee was a tax because it served "the purpose of providing funding for public services at large, and not to the individual assessed"); *Hillis Homes, Inc. v. Snohomish County,* 97 Wash.2d 804, 650 P.2d 193, 196 (1982) (ruling that an impact fee was an illegal tax because the primary purpose of the fee was "to offset the costs of providing specified services" rather than to regulate development); 9 *The Law of Municipal Corporations* § 26.17, at 48 (stating "if the charge exceeds the expense of issuance of a license and costs of regulation, it is a tax"). Because such a tax has not been expressly authorized by the legislature, the City was without authority to impose it. Accordingly, we affirm the district court's declaratory judgment that the mandatory park dedication fee imposed by the City's ordinance is illegal. *See* 9 *The Law of Municipal Corporations* § 26.32.20, at 97 ("Permit fees exacted for revenue-raising purposes or to offset the cost of general governmental functions are invalid."). Likewise, we affirm the court's grant of an injunction preventing the future collection of such fees.

## III. Constitutional Claims.

The plaintiff also sought relief under 42 U.S.C. § 1983, claiming a deprivation of

rights under the United States Constitution. *See generally Petersen v. Davenport Cmty. Sch. Dist.,* 626 N.W.2d 99, 103 (Iowa 2001) (stating that claim under § 1983 must be based on a violation of federal law). The trial court ruled that the ordinance violated the Takings Clause, the Equal Protection Clause, and substantive due process; the court also awarded attorney fees under 42 U.S.C. § 1988. We consider these claims despite the fact that we have already invalidated the parks fee under state law because a violation of the plaintiff's federal constitutional rights under § 1983 would permit the plaintiff to recover its attorney fees.

### A. Takings.

■■■ The Fifth Amendment guarantees that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. The "just compensation" clause is made applicable to the states by the Fourteenth Amendment. *Iowa Coal Mining Co. v. Monroe County,* 555 N.W.2d 418, 430 (Iowa 1996).

Although the parties spend much effort in debating the appropriate test to employ in determining whether a monetary exaction or impact fee has effected a taking, we do not reach that issue. We have already determined that the fee at issue is a tax, not a regulatory fee or impact fee. Therefore, we turn to the principles applicable to Fifth Amendment challenges to taxes.

■■■ The imposition of a tax, even an invalid one, is generally considered not to constitute a Fifth Amendment taking. *See Halliburton Co. v. United States,* 41 Fed. Cl. 272, 274 (Fed.Cl.1998); *Swisher Int'l, Inc. v. United States,* 178 F.Supp.2d 1354, 1362 (Ct.Int'l Trade 2001); *Home Builders Ass'n v. City of Scottsdale,* 183 Ariz. 243, 902 P.2d 1347, 1350 (1995), *rev'd on other grounds,* 187 Ariz. 479, 930 P.2d 993 (1997). *See generally* 71 Am.Jur.2d *State and Local Taxation* § 61, at 351 (2001) (stating that Takings Clause is "applicable to the power of eminent domain, but not to the power of taxation"). The plaintiff argues, nonetheless, that the United States Supreme Court held in *Frick v. Pennsylvania,* 268 U.S. 473, 496, 45 S.Ct. 603, 607, 69 L.Ed. 1058, 1065 (1925), that an invalid tax is a constitutional due process violation. We do not think *Frick* stands for this broad proposition. In *Frick,* the Court held that a *state* tax was invalid because the state had no power under the *federal* constitution to impose it. 268 U.S. at 488, 496, 45 S.Ct. at 604, 607, 69 L.Ed. at 1062, 1065. Here, the parks fee is invalid under *state* law. We have previously held that the invalidity of local government action under state law does not rise to the level of a federal constitutional violation. *See Blumenthal Inv. Trusts,* 636 N.W.2d at 267; *Petersen,* 626 N.W.2d at 103.

■■■ We do note that a few courts have entertained a Takings Clause challenge to a taxing measure. These courts have required that the tax be confiscatory before it could be considered a taking. *See Quarty v. United States,* 170 F.3d 961, 969 (9th Cir.1999). To prove that a tax is confiscatory, a plaintiff "must establish that the tax was not reasonably related to a substantial public purpose." *Swisher Int'l, Inc.,* 178 F.Supp.2d at 1362 (citing *Penn Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 127, 98 S.Ct. 2646, 2660, 57 L.Ed.2d 631, 650 (1978)).

Here the fees imposed under the City's ordinance were intended for and used to finance public parks. Thus, the fees were "reasonably related to a substantial public purpose," and, therefore, were not confiscatory. Accordingly, we think the fees do not constitute a taking. Therefore, we reverse the trial court's contrary ruling.

B. *Equal protection.*

The plaintiff argues that the City's ordinance violates the Equal Protection Clause of the United States Constitution and the comparable provision in the Iowa Constitution. *See* U.S. Const. amend. XIV, § 1; Iowa Const. art. 1, § 6. It formulates the alleged violation in several ways: (1) the ordinance irrationally creates two classes of taxpayers, those who paid fees before 1995 and those who paid after the 1995 increase in fees; (2) it irrationally creates two classes of taxpayers, taxing land developers without regard to the anticipated density of occupancy and taxing single family detached dwellings more than justified based on occupancy rates; (3) it irrationally excludes commercial development from imposition of the fee; and (4) it fails to give taxpayers credit for property taxes paid in the past to develop neighborhood parks in older areas of the City. We begin by identifying the applicable legal principles.

■ Taxing statutes are presumed to be constitutional. *Sperfslage v. Ames City Bd. of Review,* 480 N.W.2d 47, 49 (Iowa 1992). Moreover, because the ordinance establishing the parks fee is an economic measure, any classifications made by the ordinance need only have a rational basis. *See Blumenthal Inv. Trusts,* 636 N.W.2d at 268; *Kraft, Inc. v. Iowa Dep't of Revenue & Fin.,* 465 N.W.2d 664, 668 (Iowa 1991), *overruled on other grounds by Kraft Gen. Foods, Inc. v. Iowa Dep't of Revenue & Fin.,* 505 U.S. 71, 112 S.Ct. 2365, 120 L.Ed.2d 59 (1992). Under the rational basis test, the plaintiff "must negate every reasonable basis that may support the disparate treatment." *ACCO Unlimited Corp. v. City of Johnston,* 611 N.W.2d 506, 511 (Iowa 2000). The promotion of a legitimate state interest will support a classification against an equal protection challenge. *Sperfslage,* 480 N.W.2d at 49

■ As for the first classification challenged by the plaintiff—those who paid fees before the 1995 fee increase and those who paid the higher fees, the City argues that the increased cost of building city parks was a reasonable basis for raising the fees and thereby creating two classifications of fee payers. We think the rationale offered by the City is reasonable and supports the challenged classification.

■ The plaintiff also attacks the ordinance on the basis that the fee structure is not proportional to the anticipated occupancy of the property. For example, the plaintiff points out that the parks fee is assessed against developers based on the geographical size of the developed parcel, without regard to the anticipated density of the proposed subdivision. We first note that a taxing statute need not classify taxpayers on a basis related to the purpose served by earmarking the revenue. *Motor Club of Iowa v. Dep't of Transp.,* 265 N.W.2d 151, 155 (Iowa 1978) (upholding taxing statute on vehicles based on value rather than weight). Thus, the ordinance is not infirm under the Equal Protection Clause simply because taxpayers are classified on a basis—geographical size—that may not relate directly to the need generated for park facilities. Nor is the fee structure invalid based on the disparate treatment of homebuilders who are categorized on the basis of anticipated occupancy, e.g., single versus multi-family dwellings. As the City contends, it has the freedom in economic matters to encourage one type of property usage over another by differentiating the fees imposed on different usages. The City's fee structure does not discriminate between similarly-used properties; all single-family-detached-dwelling builders pay the same fee, all apartment builders pay the same fee, and so on. The Equal

Protection Clause does not require that persons not similarly situated be treated alike. *Blumenthal Inv. Trusts*, 636 N.W.2d at 268. *See generally* 9 *The Law of Municipal Corporations* § 26.60, at 188 (stating that a "classification may reasonably distinguish between business or trades").

The plaintiff's third equal protection challenge—the immunity of commercial development from the parks fee—suffers the same fate. The City is free to encourage commercial development by relieving it from payment of the parks fee. *See Hearst Corp. v. Iowa Dep't of Revenue & Fin.*, 461 N.W.2d 295, 306 (Iowa 1990) (upholding sales and use tax exemption for newspapers on the basis that lower price encourages reading of newspapers and citizens' literacy). In addition, the City asserts that it may reasonably assume that commercial users of property generate less need for park facilities than do residential developers. We cannot say this rationale is so arbitrary that it fails to support the disparate treatment of commercial developers and builders. *See Home Builders Ass'n v. City of North Logan*, 983 P.2d 561, 565 (Utah 1999) (holding that exemption of commercial development from park impact fee was not unconstitutional based on the assumption that "residential growth placed the primary burden upon park facilities"); *see also Waters Landing Ltd. P'ship*, 650 A.2d at 721–22 (upholding "impact tax" that did not apply uniformly across the county, noting " 'as long as the classifications made in imposing the tax are not utterly arbitrary, the tax statute meets the rational basis test' " (citation omitted)); *cf. Krull v. Thermogas Co.*, 522 N.W.2d 607, 613–15 (Iowa 1994) (finding no equal protection violation in statute that protected manufacturers who might be responsible for defective improvements to real property, but not owners, occupants, or operators of such improvements or property). *See generally Kraft, Inc.*, 465 N.W.2d at 668–69 (noting in discussion of equal protection claim that with respect to local economic regulation, " 'it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment' " (citation omitted)).

The plaintiff's final equal protection challenge is based on the City's failure to give fee payers a credit for property taxes paid in the past. We fail to understand how this failure implicates equal protection principles. Accordingly, we find no equal protection violation. *See Waters Landing Ltd. P'ship*, 650 A.2d at 722 (finding no equal protection violation on basis of claim that impact fee imposed a duplicative tax burden).

### C. *Substantive due process.*

The Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution serve as a limit on the power of the government to infringe on a person's constitutional rights. *See ACCO Unlimited Corp.*, 611 N.W.2d at 510. When a governmental unit infringes on a right that is not fundamental, "substantive due process demands no more than 'a "reasonable fit" between governmental purpose . . . and the means chosen to advance that purpose.' " *Id.* (citation omitted).

Assuming that the parks fee at issue here infringes on a right protected by the federal constitution, such right is not fundamental. *See Blumenthal Inv. Trusts*, 636 N.W.2d at 266. Therefore, we merely examine whether there is a reasonable fit between imposition of the fee and the purpose prompting the City to charge the fee.

We have already determined in connection with our takings analysis that the parks fee is reasonably related to the City's goal of establishing neighborhood parks. This conclusion also disposes of the plaintiff's substantive due process claim.

### D. *Conclusion.*

In conclusion, we find no constitutional violation so as to entitle the plaintiff to attorney fees under 42 U.S.C. §§ 1983 and 1988. Therefore, we reverse the trial court's award of attorney fees, and remand this case for entry of a judgment awarding declaratory and injunctive relief only. Upon remand, the district court shall also address the disposition of funds being held in escrow that represent payment of park fees during the pendency of this litigation. In this regard, the court may provide for notice and hearing, as appropriate, and enter any order that it deems necessary and proper.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**