Petition of the City of Des Moines, Iowa, for Confirmation of Assessments and Evaluations for the South Urban Area "B" Sanitary Sewer at the relation of Ralph F. KNUDSEN, June Knudsen, Mark A. Knudsen, Leonard M. Oxford, M. M. Oxford, Russell Abild, Tel G. Meyrat, Frances C. Meyrat, and William P. Letze, Appellants,

v.

CITY OF DES MOINES, Iowa, Appellee.

No. 2-57227.

Supreme Court of Iowa.

May 25, 1977.

Patterson, Lorentzen, Duffield, Timmons, Irish & Becker, Des Moines, for appellants.

Ahlers, Cooney, Dorweiler, Allbee, Haynie & Smith, Des Moines, and William D. Groteluschen, City Sol., Audubon, for appellee.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, UHLENHOPP and REYNOLDSON, JJ.

LeGRAND, Justice.

This is a proceeding under Chapter 417, The Code, 1973, for confirmation of valuations and assessments in connection with a sanitary sewer project in Des Moines designated as the South Urban Area "B" Sani-

tary Sewer. The trial court confirmed the assessments as made, and a number of taxpayers appeal. We modify the decree in several respects and remand for entry of judgment accordingly.

Throughout the case, the sewer project was treated as having three separate parts for assessment purposes: a sanitary treatment plant located in Warren County south of Des Moines; an outfall sewer running from the treatment plant north to the city limits of Des Moines; and a connecting outfall sewer running from that point through a portion of the city itself. We adopt this same approach in our discussion.

The trial court found the total cost of the project was $682,351. This did not include substantial engineering and right-of-way expense, which increases the total cost to $839,657.95.

Much of the difficulty in this case arises because part of the improvement lies outside the city and affects land not subject to taxation by the city. This occurred because the city obtained a federal grant on condition the completed sewer would be of sufficient capacity to service that additional area. While this made substantial federal funds available, it also resulted in greatly increased construction costs. There is some evidence the project as originally planned would have cost only $175,000. The objectors vigorously protest the manner in which these increased costs were assessed to them and protest, too, the way in which the city allocated the federal grant to the project costs.

After making adjustments to stay within the 25% maximum for assessments as fixed in §§ 391.48 and 417.59, The Code, and after prorating some of the federal grant money to the assessments, the final amounts exacted from the assessable property within the city (532.65 acres) was $318,175.38.

Nine property owners have appealed their assessments. We refer to them jointly as objectors. They raise the general issue that the assessment proceedings are invalid. Specifically they say the city failed to levy assessments on all benefited property; the city failed to assess its own property; the city failed to assess benefited property outside the city; the city assessed the objectors' property on the basis of general rather than special benefits; and the assessments were not—using the language of the statute—just and equitable as between the public generally and the property assessed.

They ask alternatively that the assessments be voided or that the court make corrections to bring the levies within the "just and equitable" mandate of §§ 417.20 and 417.37, The Code. There is no issue as to property values. The sole dispute concerns whether the assessments based on the value as found by the city are correct.

We discuss separately the three phases of the project already referred to—the sanitary treatment plant, the outfall sewer outside the city, and the outfall sewer within the city.

I. *The sewage treatment plant.*

This portion of the improvement cost $601,841, approximately 75% of the total project. The plant consisted of buildings, plumbing and electrical connections, chlorination and aeration facilities, machinery, and a connecting lagoon. It also contemplated the addition of a second lagoon (or cell) later.

This plant was designed to accommodate 634.74 acres within the city limits of Des Moines. The city owned 101.35 acres of this area. To arrive at a proper assessment, this cost was first spread over the 634.74 acres, resulting in a per acre figure of $948.16. An assessment was then levied only against the privately-owned property (532.65 acres) while the amount chargeable against the city-owned property (101.35 acres) came from the federal grant. The use of federal money to pay the share of the cost chargeable to the city is one of the principal complaints urged by the objectors. We consider this question in Division V hereof.

The objectors also challenge their assessment on the ground the treatment plant is only temporary and that it may be abandoned even before the assessment is fully

paid over the allowable installment period. We also discuss this later.

II. *The outfall sewer outside the City of Des Moines.*

This portion of the sewer cost was spread against 1,557.52 acres, the entire area affected by this improvement, at the rate of $116.64 per acre, to arrive at an assessment rate.

However, only that portion of privately-owned property lying within the city was actually assessed. The amount chargeable to the property lying outside the city and to the property owned by the city was satisfied by application of the federal grant money.

As already indicated we treat this subject in Division V.

III. *Outfall sewer within the City of Des Moines.*

Part of the outfall sewer lies entirely within the city, although designed to serve an area both within and beyond the city.

An area of 49.75 acres owned by some of the objectors was assessed at $598.02 per acre. The balance of the benefited land (951.09 acres) was charged at $27.75 per acre. This great disparity is explained by testimony that property within the 49.75 acre area need only construct laterals to make the system usable. Those outside this area (951.09 acres) can use it only after trunk lines are constructed at substantial additional expense. Hence the benefits conferred are greater for those who can use the system by lateral connections.

This line was made large enough to conform to federal grant requirements. While an 8-inch sewer line would have been sufficient to service property within the city, it was necessary to install 24-inch and 30-inch sewer lines to qualify for federal funds. The objectors were assessed only on the basis of 8-inch sewer installation. They paid none of the cost occasioned by the federal requirements.

Here, too, the cost attributable to the property lying outside the city and to land owned by the city was paid out of federal grant money. Only privately-owned property within the city was actually assessed.

IV. The trial court found the objectors had not carried their burden of showing the assessments were excessive and, particularly, had not established the amount they say their respective land had been benefited.

██ When special assessments are levied, there is a presumption some benefit is conferred on the property assessed. Ordinarily the property owner will not be heard to say his property received no benefit, although he may show it is not as great as that assigned to it by the taxing authority. The burden is on the protesting property owner to establish this by evidence which includes proof of the actual benefit to his property. *Goodell v. City of Clinton,* 193 N.W.2d 91, 93 (Iowa 1971) and citations; *Persinger v. City of Sioux City,* 257 Iowa 727, 729, 133 N.W.2d 110, 111–112 (1965); *Rood v. City of Ames,* 244 Iowa 1138, 1158, 60 N.W.2d 227, 238 (1953).

V. Although we agree with this finding, it does not reach the real import of the objectors' argument—that the assessments are not just and equitable under the standards laid down by §§ 417.20 and 417.37, The Code, 1973. These statutes provide:

"§ 417.20 *Assessment basis.* Each lot, part of lot, or parcel of property shall bear its just proportion of said assessment upon the area basis, except as herein otherwise provided.

"§ 417.37 *Power of court.* Upon the hearing upon said petition, the said court shall have power to correct any irregularities or inequalities in valuations or in the schedule of assessments, and shall consider any objections because of alleged illegal procedure or fraud in the proceedings.

"The court shall inquire whether the city solicitor has omitted any property benefited, and as to whether the schedule of assessments is just and equitable as between the public and property assessed, and between the lots or parcels of property assessed.

"The court shall have the power to revise, correct, or modify the description or the cost between the properties affected, or the city solicitor shall make any corrections upon the order of the court."

Our review is de novo. In special assessment cases absolute equality is not attainable. Approximation is all that can reasonably be expected. *Brown v. City of Des Moines*, 245 N.W.2d 533, 540–541 (Iowa 1976); *Goodell v. City of Clinton, supra*, 193 N.W.2d at 95.

In *Early v. City of Ft. Dodge*, 136 Iowa 187, 189–191, 113 N.W. 766, 767 (1907) and *In re Bowdoin St., City of Des Moines*, 240 Iowa 64, 68–70, 35 N.W.2d 571, 573–574 (1949), we rejected the claim that § 417.37 limits courts to correcting assessments only if there is illegal procedure or fraud. We held there the judicial power is broad enough to make whatever adjustments are necessary to attain "just and equitable" results. In *Early* we said:

"The question involved in these assessments is not so much one of methods or plans, as of results. It makes little difference what fanciful theories or arbitrary rules the city council or the court may employ in discussing the question, the final and decisive inquiry is whether the assessment when made is just and equitable and bears some reasonable proportion to the benefits which the property derives from the improvements for which payment is to be made. That is the question which the statute expressly authorizes the court to consider, and it was the question which the trial court in the instant case undertook to adjudicate. In so doing, it did not transcend its power or jurisdiction.

"Counsel further say that, even conceding the authority of the court to act in the premises, the evidence conclusively shows that the property was benefited by the street improvement to an amount in excess of the assessment thereon, and plaintiffs therefore have no just cause of complaint. If this be a correct principle, then no property owner could rightfully object so long as his assessment is not in excess of the benefits received, and it might easily happen that the entire cost would be assessed upon only a part of the abutting property. Under our statute, the true rule, while prohibiting an assessment in excess of the benefits to the property, requires that the burdens be distributed ratably and proportionately upon all of the abutting property in the taxing or assessment district. Both requirements must be satisfied before a just and equitable assessment can be had."

Thus it appears an assessment may fail the "just and equitable" test even though it is not excessive when measured against the benefits conferred. We hold that is what happened here.

VI. We set out the reasons for this conclusion. No one circumstance alone would dictate this result, but cumulatively the conditions shown by the record work unjustly and inequitably against the objectors.

We are talking about conditions now three years old. They may have drastically changed. We must rely on the record as of that time, stale though it may be.

First, we point out most of the objectors were assessed the maximum statutory 25% and still have a sewer improvement they cannot use without additional expense. At the time of trial, according to the city's witnesses, it was a sewer "available" for future use. For some, this would involve only a lateral hook-on at little expense. For others, it would be substantial, perhaps as much as another 25% of the value of the property. We do not accept objectors' argument this constitutes a double assessment for a single improvement, but nevertheless it is significant in determining what is a just and equitable assessment.

Another factor is that the owners of property outside the city who have been benefited by this improvement are not paying anything. It is true benefit to them is in futuro; but so is objectors'. It is also true the city is without authority to assess the property because it lies beyond the municipal boundaries. *See Turner v. Cobb*, 195 Iowa 831, 839, 192 N.W. 847, 850 (1923).

Nevertheless it is expected they will someday use the system. The evidence indicates as much, and the federal grant to cover some of the expense of the project was in anticipation of such use.

When property owners outside the city are permitted to hook on, the city may be able to charge a fee. § 393.14, The Code. We do not pass on this question. Even if it can, this would not inure to the benefit of objectors. It is no answer to say objectors have not been prejudiced because these costs were paid from the federal grant. We recognize the city's right under its contract with the federal government to use the funds as it did. However, it cannot do so if the result is to burden objectors with a disproportionate share of the cost.

Next, we have the objectors' complaint the treatment plant is a temporary facility only. Testimony on this point was equivocal. The city's chief design engineer, Floyd Bentz, said it was "planned" as temporary but that "another facility may never be built." Even if the treatment plant is only temporary, objectors may, of course, be assessed for its costs; but the benefits accruing to them would then be different than if it were permanent. This factor was not considered at all.

Still another condition concerns the testimony about the area which the treatment plant will accommodate. It was designed to service 634.75 acres, all within the city of Des Moines. However, the evidence is so speculative and so dependent upon future events that it serves a poor basis for that conclusion. If the population growth is less than expected, the plant conceivably could accommodate the whole area, not just that within the city. What area can ultimately be serviced depends upon the development of the land lying within the project boundaries. This includes a large shopping center.

The witnesses stated much depended on how this shopping center eventually operated. Important factors include the number of restaurants, the number of restrooms, the amount of space devoted to parking area, and other circumstances. None of this was known at the time of trial. Mr.

Bentz testified it was possible the treatment plant would be a permanent one for the area. We conclude he meant the treatment plant might be large enough for the whole 1,557.52 acre area if growth predictions fell short.

We hold the assessment against the objectors' property is not just and equitable under § 417.37. There are two courses open to us. One is to set aside the assessments entirely and the other is to make such adjustments as will reach an equitable result. We elect the latter course.

All the assessments were made on a per acre basis. We direct that the total cost of the treatment facility be spread equally on a per acre basis against the entire 1,557.52 acres included in this improvement and that the objectors' assessments for the treatment plant be reduced accordingly.

This might be unfair if other private property owners were adversely affected, but they are not. Any amount by which the objectors' assessments are reduced will be paid by the city, since no other property is assessable. We believe this is eminently fair. It not only relieves the objectors of an inequitable burden, but it puts the burden where all or part of the expense may be recouped later.

Objectors vigorously resist the application of federal funds to the payment of the city's obligations and to that portion of the outfall sewer outside the city before any of that money was used to reduce their tax liability. There is some appeal to this argument. However, we have already pointed out that exact equality in these matters is not possible. We must be satisfied with approximate equality. We decline to disturb the manner in which the city allocated federal funds because we believe the result we have reached substantially accomplishes that end for the objectors.

In conclusion, we hold that the assessments for the outfall sewer line, both that part inside the city and outside the city, be confirmed and approved as made; that the assessment for the sanitary treatment plant be modified and reassessed as herein set

out; and that the case be remanded for correction by the city of the assessments made. See § 441.37, The Code.

AFFIRMED IN PART, MODIFIED IN PART, AND REMANDED WITH INSTRUCTIONS.