MILTON O. AND PHYLLIS A. THORSON REVOCABLE ESTATE TRUST, M & W Mini Storage, Max & Elizabeth Isaacson, Daniel P. and Joyce E. Spain, and Iowa Concrete Block & Material Co., Plaintiffs–Appellees,

v.

CITY OF WEST DES MOINES, Defendant–Appellant.

No. 4–596.

Court of Appeals of Iowa.

March 30, 1995.

Ivan T. Webber and R. Mark Cory of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellant.

Ronald M. Rankin, William A. Wickett and Gregory J. Wilson of Patterson, Lorentzen, Duffield, Timmins, Irish, Becker & Ordway, Des Moines, for appellees.

Heard by DONIELSON, C.J., and HABHAB and CADY, JJ.

CADY, Judge.

This is an appeal by the City of West Des Moines from the district court's ruling reducing the assessments against various property owners for the costs of a street paving project. On our review of the case, we affirm in part and modify in part.

The City of West Des Moines built a paved road in 1992 on a strip of land acquired from Iowa Concrete Block & Material Company. The right-of-way had been used by Iowa Concrete for access to its property from Fuller Road. The surface of the private road was a mixture of gravel and dirt. The road was shared by other abutting property owners, which included the City of West Des Moines. The users of the private road also shared in the maintenance costs. The area surrounding the road is an industrial park.

The paved road is now known as South 16th Street. It is a dead-end street and extends 1530 feet south from Fuller Road. The city owns land on the east side of the street and operates its public works facility on the property. Iowa Concrete operates its business just north of the public works facili-

ty. The other properties involved in the challenged assessment are located on the west side of the street. Each tract has access off Fuller Road, but portions of their property lines also abut South 16th Street.

The city began plans to construct the road after Iowa Concrete met with city officials to discuss its concerns about unauthorized traffic on the private road. The city rejected the suggestion by Iowa Concrete that a gate be erected, and pursued plans to acquire the land and construct the road. The city was interested in providing better access to its public works facility. The facility stores numerous city vehicles and supplies, and is the fueling station for approximately one-half of the city fleet of vehicles. The public also uses the facility for meetings and other services.

There were other considerations for the city in the construction of the street. One important consideration was the street could be extended in the future to provide the necessary alternative access to a planned regional park south of the industrial park area. Many alternative access roads were considered. The street would also assist in the continuous development of an overall transportation network in that area of town. The paving project would also eliminate one of the several unimproved streets in the area, which was a source of many complaints from area businesses.

The city acquired the right-of-way from Iowa Concrete for approximately $59,000. The total cost of the project exceeded $450,-000. The construction consisted of an eight-inch thick concrete pavement, together with storm sewers and the installation of a water main near the Fuller Road juncture. The standard thickness for a paved street is six inches.

The city excluded the costs of a water main and the additional two inches of pavement in making its assessment. The remaining costs were then assessed to the affected properties under the modified "Flint Formula." The city included itself in the formula as the owner of the public works property, as well as the owner of a nearby sewer right-of-way. The relevant amounts assessed by the city were:

| | |
|---|---|
| M & W Mini Storage | $ 35,455.28 |
| Max & Elizabeth Isaacson | $ 16,876.08 |
| Daniel & Joyce Spain | $ 17,281.28 |
| Milton & Phyllis Thorson Trust | $ 31,395.86 |
| Iowa Concrete | $107,451.65 |
| City of West Des Moines | $ 33,766.93 |

The city acknowledged after the lawsuit was filed that the assessment to M & W Mini Storage was incorrect, and reduced it to $12,-389.81. The district court found the Spain assessment was correct, but reduced the other assessments as follows:

| | |
|---|---|
| M & W Mini Storage | $ 6,000 |
| Max & Elizabeth Isaacson | $ 15,000 |
| Milton & Phyllis Thorson Trust | $ 16,000 |
| Iowa Concrete | $ 47,000 |

The evidence at trial included opinions of the increased market value of the abutting property due to the presence of the paved street. This evidence showed the market value of the abutting property increased as follows:

| | |
|---|---|
| M & W Mini Storage | $ 3,000–5,000 |
| Max & Elizabeth Isaacson | $ 9,000–12,000 |
| Daniel & Joyce Spain | $15,000–20,000 |
| Milton & Phyllis Thorson Trust | $ 9,000–12,000 |
| Iowa Concrete | $31,200 |

The city claims the trial court improperly reduced the challenged assessments by placing too much emphasis on evidence of market value. It argues the evidence produced by the property owners was insufficient to overcome the presumption that the assessment was correct.

■ The law permits a municipality to assess the costs of most public improvements against property within the assessment district in an amount not in excess of the special benefits conferred upon the property. Iowa Code § 384.61 (1993). Once a municipality has ordered a special assessment, it is presumed some benefit results to the assessed property owners. *Goodell v. City of Clinton,* 193 N.W.2d 91, 93 (Iowa 1971). It is also presumed the assessment amount is correct and not in excess of the special benefit derived from the improvement. *Id.* The burden rests with the property owner to show the assessment is excessive by evidence including proof of the actual benefit to the property. *Id.* Without such evidence, the assessment stands. *Id.*

■ The single issue presented on appeal in this case is whether the assessment levied by the city exceeded the special bene-

fit conferred upon the affected property owners. Our review is de novo. *Knudsen v. City of Des Moines*, 254 N.W.2d 1, 4 (Iowa 1977). We must decide if the property owners sustained the burden of proof. We give weight to the findings of the trial court, but are not bound by them. *Goodell*, 193 N.W.2d at 95.

■ Although our task in public improvement cases is to determine the special benefit conferred on the neighboring property, in street paving cases we ordinarily must determine what portion of the improvement represents the special benefit to the property owners and what portion represents general benefit to the city. This is because street paving projects usually confer both general and special benefits, and the abutting property owners are not required to pay for the general benefits accruing to the community at large. *Id.* at 94–95. The finished street is available for all in the community to use; and all, including the abutting land owners, contribute to the costs through general taxation. *Id.* at 94. The abutting property owners, however, obtain additional benefits for which they must separately pay. *Id.* It is these benefits which we must extract and determine.

■ Mathematical certainty does not play a role in the difficult process of determining the amount of assessment. *Id.* at 95. Instead, a pragmatic approach is followed, and approximation is all that is expected. *Id.* Many factors help delineate between special and general benefits. These include: the present and future use of the abutting property, the increase in the market value of the affected property, the size and shape of the abutting property, the proximity of the property to the improvement, the amount of property fronting the improvement, the needs of the property owners served by the improvement, and the primary purpose behind the construction of the improvement. *City of Clive v. Iowa Concrete Block & Material Co.*, 298 N.W.2d 585, 593 (Iowa 1980); *Goodell*, 193 N.W.2d at 93; *Spencer Shopping Center, Inc. v. City of Spencer*, 200 N.W.2d 513, 515–16 (Iowa 1972); *Camp v. City of Davenport*, 151 Iowa 33, 36, 130 N.W. 137, 139 (1911).

Some benefits may even be derived from intangible, aesthetic factors. Clearly, actual value embraces much more than market value. *See Camp*, 151 Iowa at 38, 130 N.W. at 139.

Expert testimony and accepted formulas can be useful in determining actual value, as long as all relevant factors are considered. On the other hand, a practical overview of all the surrounding circumstances must be considered. *See Goodell*, 193 N.W.2d at 94; *Camp*, 151 Iowa at 37–38, 130 N.W. at 139.

In this case, the city relied primarily on the modified "Flint Formula" to determine the special benefit to the adjoining properties. The formula focused on the frontage size and depth of the abutting property, and assigned "benefit points" for each tract. The results of the formula were then examined independently to consider whether the assessments were reasonable as compared to past projects. The property owners attack the assessment method as failing to consider all relevant factors, and failing to allocate part of the costs of the street project to the general benefit of the community.

Only 79.41 percent of the total costs of the project were assessed. The costs of the water main and the two inches of pavement in excess of the standard six-inch thickness were not assessed. Additionally, the public works property abutting the street and a sewer right-of-way owned by the city were included within the assessment formula. This further reduced the actual assessment to the private property owners to 64.72 percent of the total project costs. The city claims the self-assessment and exclusion of the extra two inches of concrete from the assessment represents the appropriate allowance for the public benefit portion of the project.

We agree that the self-assessment and extra thickness of pavement reflect general benefits to the city, not special benefits to the affected private land owners. However, the benefit to the community is not confined to these circumstances. The evidence in the case reveals the road itself provides some general benefit to the public beyond the easy access to the public works building. Although the street is currently a dead-end

road, it was designed as part of an important future alternative access to a nearby planned regional park. Moreover, the original supporter of the street project was not Iowa Concrete, but the city. The city implemented the paving project into the five-year city plan to benefit both its current and future development. The benefits extended far beyond improved access to the public works complex.

The city argues the owners failed in their burden of proof because they produced no evidence of the value of the special benefit received from the project. We disagree. Each owner introduced evidence concerning the unique circumstances and uses of its property as related to the street. Moreover, each property owner offered expert testimony of the increase in market value. This evidence, although not alone dispositive, is sufficient with all the other evidence to overcome the presumption that the assessment made by the city was correct. *See Goodell,* 193 N.W.2d at 96. The evidence of the overall purposes and general benefits of the project further help overcome the presumption.

 We have reviewed each challenged assessment. We agree with the conclusions reached by the trial court concerning the Spain and Isaacson tracts. We also agree that the assessments by the city on the remaining three tracts were excessive. The general benefits resulting from the paving project were greater than the city allotted for these tracts. We do not, however, concur with the amount of the reductions.

We recognize the difficulty placed on trial courts in determining the proper assessment. *See id.* At the same time, we are mindful of our obligation to review the case de novo.

In making this review, we conclude the assessments involving the M & W Mini Storage, Thorson Trust, and Iowa Concrete tracts should be increased from the levels set by the trial court.

We do not believe the trial court gave full consideration to the special impact of the road on the M & W Mini Storage, Thorson Trust, and Iowa Concrete tracts. Prior to the construction of the road, it was necessary for M & W Mini Storage to rely upon an easement for access to its property. The new road gave the land unimpeded access to a public road. Additionally, the project enhanced the drainage of the land. The Thorson Trust property also gained increased access and visibility by transforming it into a corner lot. Finally, the new road relieved Iowa Concrete of the responsibility of maintaining the dirt road, and eliminated the problems associated with owning the road such as controlling access. The project gave each tract special benefits which must be fully recognized in the assessment. We conclude the proper assessments for these three parcels are:

| | |
|---|---|
| M & W Mini Storage | $ 8,000 |
| Milton & Phyllis Thorson Trust | $22,000 |
| Iowa Concrete | $68,000 |

In conclusion, we affirm in part and modify in part. Costs are divided equally.

**AFFIRMED IN PART AND MODIFIED IN PART.**