*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CAMERON CAMPBELL,

        Defendant-Appellant.

FOR PUBLICATION
December 16, 2025
1:31 PM

No. 368742
Wayne Circuit Court
LC No. 87-010252-01-FC

Before: K. F. KELLY, P.J., and PATEL and FEENEY, JJ.

PATEL, J.

In 1988, a jury convicted defendant of two counts of second-degree murder,[1] MCL 750.317, assault with intent to commit murder (AWIM), MCL 750.83, and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). Defendant, who was 18 years old at the time of the offenses, was sentenced to concurrent prison terms of 65 to 100 years for each second-degree murder conviction and the AWIM conviction, to be served consecutively to a two-year term of imprisonment for the felony-firearm conviction.[2] Defendant now appeals by delayed leave granted[3] the opinion and order denying his motion for relief from judgment.

We find no error warranting reversal of defendant's convictions. But we conclude that the recent evolution of the law regarding juvenile and 18-year-old offenders has rendered defendant's term-of-years sentences of 65 to 100 years' imprisonment for his second-degree murder and

---

[1] The jury found defendant guilty of two counts of second-degree murder as lesser offenses to the original charges of two counts of first-degree premeditated murder, MCL 750.316(1)(a).

[2] This Court affirmed defendant's convictions and sentences in his direct appeal, which was consolidated with the appeal of his codefendant, Andre Cammons. *People v Cammons*, unpublished per curiam opinion of the Court of Appeals, issued July 9, 1992 (Docket Nos. 110588 and 111199).

[3] *People v Campbell*, unpublished order of the Court of Appeals, entered April 15, 2024 (Docket No. 368742).

AWIM convictions invalid under the principle of proportionality because the sentencing court failed to consider defendant's youth and its attendant characteristics as mitigating factors. For the reasons stated in this opinion, we affirm in part and reverse in part the trial court order denying defendant's motion for relief from judgment, vacate defendant's sentences for second-degree murder and AWIM, and remand for resentencing.

## I. FACTS AND PROCEDURAL HISTORY

Defendant's convictions arise from his participation in the murders of the victims, Eddie Haack and Charles Kniseley, and an assault of the victim, Harold Haack. On September 29, 1987, the Haacks and Kniseley drove to a house in Detroit to purchase cocaine. Kniseley went inside to make the purchase. Men who were standing on the front porch observed the Haacks waiting in the vehicle and ordered them at gunpoint to go inside the house. Codefendant, Andre Cammons, entered the home and screamed at the Haacks and Kniseley while swinging a handgun. Cammons believed that the three men had broken into his house, stolen his stereo equipment, and were trying to trade that same equipment for drugs.

Cammons ordered the three men to the dining room. Defendant and other men were standing in the dining room when the Haacks and Kniseley entered. Cammons ordered the three men to lie on the ground, face down, and pull their pants to their knees. The men complied. Cammons began kicking Harold, and then eight other men, including defendant, joined in the assault of all three men. The beating left Kniseley and Eddie unconscious. Harold was severely injured, but conscious.

Cammons forced Harold at gunpoint to move Eddie and Kniseley's unconscious bodies to the living room. Cammons then told defendant and another man "to take them home and get rid of them." Cammons handed firearms and money to defendant and the other man. Cammons opened the front door, and he and defendant ordered Harold to move Eddie and Kniseley to their car. Eddie and Kniseley were thrown on top of each other in the back seat. Defendant and another man got into the front seat with Harold, held a gun to Harold, and ordered him to drive.

Harold realized that defendant and the other man were not taking them home. At one point, defendant told Harold to stop the car, claiming he needed to use the bathroom. Harold pretended that his brakes did not work and tried to hit another car, but defendant grabbed the steering wheel to avoid the crash. Defendant and the other man pointed their guns at Harold and ordered him to stop the car. Defendant pointed his gun at Harold's ear. Harold heard the other man tell defendant, "No, not yet." Harold accelerated the car, aimed it at a fire hydrant, and leaped from the car before impact.

As Harold ran away, he looked back and saw defendant and the other man get out of the car. The other man reached into the car and fired several shots into the vehicle. Defendant and the other man then both shot at Harold while chasing him down the street Harold hid behind a bush in a backyard, but they found him. One of the two men shot Harold four times before they ran off. Harold survived and contacted the police. The police located Kniseley's vehicle with Eddie's and Kniseley's deceased bodies stacked on top of each other in the backseat.

In 1988, Cammons and defendant were tried together before a jury. Defendant was convicted and sentenced as indicated. Defendant thereafter appealed his convictions and sentences. This Court affirmed his convictions and sentences, but remanded for articulation of the reasons for the departure from the guidelines for the AWIM convictions only. *People v Cammons*, unpublished per curiam opinion of the Court of Appeals, issued July 9, 1992 (Docket Nos. 110588 and 111199), p 5. Our Supreme Court denied defendant's application for leave to appeal. *People v Campbell*, 441 Mich 877 (2015).

In 2012, defendant moved pro se for a reduction in his sentence, which the trial court denied. In 2020, defendant moved for relief from judgment raising the following arguments: (1) the admission of a witness's preliminary examination testimony in redacted form at trial violated his right to present a complete defense (2) various comments made by the prosecutor during closing arguments amounted to prosecutorial misconduct; (3) trial counsel was ineffective for failing to object to the redaction of the witness's testimony and to the prosecutor's improper comments during closing arguments; (4) the trial court abused its discretion by imposing disproportionate sentences without adequate justification; and (5) appellate counsel was ineffective for failing to raise these claims on direct appeal. The trial court denied the motion, concluding that defendant's pro se motion for a reduction in his sentence was a motion for relief from judgment and thus the successive motion for relief from judgment was barred by MCR 6.502(G).

Defendant filed a delayed application for leave to appeal. This Court vacated the trial court's order and remanded the case for reconsideration of the motion as defendant's first motion for relief from judgment under MCR 6.508(D) because the trial court had "erred by characterizing defendant's prior motion for sentence reduction as a motion for relief from judgment . . . ." *People v Campbell*, unpublished order of the Court of Appeals, entered March 17, 2022 (Docket No. 359494). On remand, the trial court rejected defendant's claims on the merits and denied his motion. Defendant now appeals by delayed leave granted.

## II. STANDARDS OF REVIEW

We review a trial court's decision on a motion for relief from judgment for an abuse of discretion and its findings of facts supporting its decision for clear error." *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, or makes an error of law." *Id.* at 628-629 (citations omitted). Clear error occurs "if, after a review of the record, this Court is left with a definite and firm conviction that a mistake was made." *People v Meeker (On Remand)*, 340 Mich App 559, 563; 986 NW2d 622 (2022).

We also review sentencing decisions for an abuse of discretion. *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022). A trial court abuses its discretion if the sentence imposed is not "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (cleaned up).

We review de novo the constitutional question whether a defendant was denied his constitutional right to present a defense. *People v Unger*, 278 Mich App 210, 247; 749 NW2d 272 (2008). We also generally review de novo the constitutional issue whether the prosecutor engaged in misconduct. *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003). But unpreserved claims are reviewed for plain error. *People v Evans*, 335 Mich App 76, 88; 966NW2d 402 (2020).

An ineffective-assistance-of-counsel claim presents a "mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). We review de novo constitutional questions and the trial court's findings of fact, if any, are reviewed for clear error. *Id*.

### III. DISPROPORTIONATE SENTENCES

Defendant, who was 18 years old at the time of the offenses, argues that his sentences of 65 to 100 years' imprisonment for his second-degree murder and AWIM convictions violate the principle of proportionality. We agree.

Motions for relief from judgment are governed by MCR 6.500 *et seq*. A "defendant has the burden of establishing entitlement to the relief requested." MCR 6.508(D). Relief is not proper if a defendant "alleges grounds for relief that could have been previously raised, unless the defendant demonstrates both good cause for failing to raise such grounds earlier as well as actual prejudice." *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018). See also MCR 6.508(D)(3)(a) and (b).

Although defendant raised a sentencing issue in his direct appeal, see *Cammons*, unpub op at 4, he did not challenge the proportionality of his sentence. Subsequently, the United States Supreme Court concluded that mandatory life without parole (LWOP) sentences are cruel and unusual punishment as applied to juveniles under the age of 18 who have been convicted of first-degree murder. *Miller v Alabama*, 567 US 460, 465; 132 S Ct 2455; 183 L Ed 2d 407 (2012). As this Court reasoned in *People v Eads*, __ Mich App __, __; __ NW3d __ (2025) (Docket No. 357332); slip op at 5, lv gtd 25 NW3d 118 (2025), "the fact that [defendant's] direct appeal occurred well before *Miller* and its progeny came into being is enough in itself to establish good cause under MCR 6.508(D)(3)(a) for failing to raise the challenge at that time."

In order to establish that he is entitled to resentencing, defendant must also demonstrate actual prejudice. In the context of challenging a sentence, "actual prejudice" requires a defendant to establish his sentence is invalid," which he can do by prevailing on the merits of the challenge." *Id*. at __; slip op at 5. As discussed *infra*, the evolution of the law regarding juvenile and 18-year-old offenders invalidates defendant's sentences for second-degree murder and AWIM and, consequently, defendant is entitled to resentencing.

Courts must impose reasonable sentences. *Steanhouse*, 500 Mich at 471. A sentence is reasonable if it adheres to the "principle of proportionality," which requires the sentence to be " 'proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Id*. at 473-474, quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). "When a trial court sentences a defendant within the guidelines' recommended range, it creates a

presumption that the sentence is proportionate." *People v Posey*, 512 Mich 317, 360; 1 NW3d 101 (2023) (Opinion by BOLDEN, J.). To overcome that presumption, "the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate." *Id*. at 359. Defendant acknowledges that his sentences of 65 to 100 years' imprisonment were within the applicable guidelines' range of 120 months to life, but argues that his sentences violate the principle of proportionality because his youth at the time of the offense must be treated as a mitigating factor when imposing a term-of-years sentence.

In *Miller*, the United States Supreme Court applied its rationale from *Roper v Simmons*, 543 US 551; 125 S Ct 1183; 161 L Ed 2d 1 (2005) and *Graham v Florida*, 560 US 48; 130 S Ct 2011; 176 L Ed 2d 825 (2010) that "children are constitutionally different from adults for purposes of sentencing." The Court explained that "juveniles have diminished culpability and greater prospects for reform" and thus "they are less deserving of the most severe punishments." *Miller*, 567 US at 471 (cleaned up). The Court explained that children are different from adults in three primary ways:

> First, children have a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking. Second, children are more vulnerable to negative influences and outside pressures, including from their family and peers; they have limited control over their own environment and lack the ability to extricate themselves from horrific, crime-producing settings. And third, a child's character is not as well formed as an adult's; his traits are less fixed and his actions less likely to be evidence of irretrievable depravity. [*Id*. (cleaned up).]

Because mandatory sentences of LWOP preclude consideration of the offender's age and its attendant characteristics, the *Miller* Court concluded that such sentences for offenders who were under the age of 18 at the time of the offenses violate the principle of proportionality and the Eighth Amendment's ban on cruel and unusual punishment. *Id*. at 479. "By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." *Id*. The Court therefore dictated that sentencing courts "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id*. at 480.

Two years later, the Michigan Legislature enacted "a sentencing scheme that eliminated mandatory life without the possibility of parole for all individuals who were convicted of specific crimes, including first-degree murder, for acts committed while they were juveniles." *Boykin*, 510 Mich at 179-180, citing MCL 769.25; MCL 769.25a. The United States Supreme Court subsequently held that *Miller* applied retroactively to cases on collateral review because it announced a new substantive rule of constitutional law. *Montgomery v Louisiana*, 577 US 190, 206; 136 S Ct 718; 193 L Ed 2d 599 (2016).

"Michigan law has evolved in the wake of *Miller*," and our "Supreme Court has looked to and built upon *Miller*'s guiding principles in construing the law of this state with respect to the sentencing of juveniles." *Eads*, ___ Mich App at ___; slip op at 6. In *Boykin*, 510 Mich at 185, our Supreme Court recognized that "juvenile status matters, and special consideration must be paid to youthful offenders before the harshest sentences may be imposed." The Court declined to limit

-5-

application of *Miller* and its progeny to the context of mandatory LWOP sentences for juvenile defendants. *Id*. at 187-188. Applying *Miller*'s principles to the principle of proportionality in this state's sentencing jurisprudence, the Court concluded that a sentencing court must consider the offender's youth and treat it as a mitigating factor when imposing a term-of-years sentence on a juvenile defendant. *Id*. at 188-189.

Our Supreme Court expanded even further on *Miller*'s guiding principles in *People v Parks*, 510 Mich 225, 267-268; 987 NW2d 161 (2022), holding that a mandatory sentence of LWOP for first-degree murder is also unconstitutional for offenders who were 18 years old at the time they committed the offense, and that any 18-year-old who was given a mandatory LWOP sentence was entitled to be resentenced.[4] The Court explained that it was extending *Miller*'s protections to 18-year-old defendants because there was a clear scientific consensus that late adolescence—including those 18 years old—"is a key stage of development characterized by significant brain, behavioral, and psychological change." *Id*. at 249. The Court detailed the scientific findings, and explained: "Overall, late-adolescent brains are far more similar to juvenile brains, as described in *Miller* . . . than to the brains of fully matured adults." *Id*. at 252. The Court stated that the "logic articulated in *Miller* about why children are different from adults for purposes of sentencing applies in equal force to 18-year-olds." *Id*. at 259. The Court reasoned that "no meaningful neurological bright line exists between age 17 and age 18; to treat those two classes of defendants differently in our sentencing scheme is disproportionate to the point of being cruel under our Constitution." *Id*. at 266 (cleaned up). The Court concluded that Michigan's Constitution "prohibits imposing sentences of mandatory life without parole for 18-year-old defendants convicted of first-degree murder, given that their neurological characteristics are identical to those of juveniles, as articulated in *Miller* . . . ." *Id*. at 265. The Court determined that such offenders are entitled to "all the protections enumerated in our caselaw interpreting [MCL 769.25]." *Id*. at 267 n 19. This includes "a rebuttable presumption against life-without-parole sentences . . . ." See *id*. at 241. And as with juveniles, the "default" term-of-years sentence for an 18-year-old offender is "a minimum sentence of 25 to 40 years' imprisonment and a maximum of at least 60 years' imprisonment." *Id*. at 267 n 19.[5]

*Miller*'s principles have also been applied to juvenile defendants convicted of second-degree murder. In *People v Stovall*, 510 Mich 301, 322; 987 NW2d 85 (2022), which was decided on the same day as *Boykin* and *Parks*, our Supreme Court held that "a parolable life sentence for a defendant who commits second-degree murder while a juvenile" is unconstitutional. The Court noted that a parolable life sentence "is particularly severe when imposed on a juvenile, given the important mitigating ways that children are different from adults." *Id*. at 315. The Court further observed that "a parolable life sentence for second-degree murder is often more severe than the

---

[4] Our Supreme Court recently extended *Miller* protections, as discussed in *Parks*, to individuals who were 19 or 20 years old at the time they committed the offense of first-degree murder. See *People v Taylor*, ____ Mich ___; ___ NW3d ___ (2025) (Docket Nos. 166428 and 166654); slip op at 13, 37-38.

[5] Subsequently, in *People v Poole*, ___ Mich ___; ___ NW3d ___ (2025) (Docket No. 166813), slip op at 1, the Supreme Court held that *Parks* applies retroactively to cases on collateral review.

minimum sentences now given to most juveniles who commit first-degree murder: 25 to 40 years." *Id*. at 316.

Relying on *Stovall*, this Court concluded that a term-of-years sentence of 50 to 75 years for second-degree murder for an offender that was 16 years old at the time of the offense was unconstitutional and also disproportionate because the sentencing court failed "to consider [the defendant's] youth and its attendant characteristics as mitigating factors." *Eads*, __ Mich App at __; slip op at 1. Recognizing the legal distinction between a punishment that is "so disproportionate as to be unconstitutionally cruel or unusual" and one that violates "the nonconstitutional 'principle of proportionality' " discussed in *Milbourn*, the *Eads* Court stated:

> In light of *Miller* and its progeny, Eads's sentence lacks the requisite proportionality. As previously detailed, Eads, despite his juvenile status and all that has now been recognized to come with it, received a sentence for second-degree murder that would require him to outlive his life expectancy before even becoming eligible for parole and would deny him a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. Indeed, the sentence is, in purpose and effect, even more severe in some respects than the life-sentence alternative that our Supreme Court has now deemed so disproportionate as to be categorically unconstitutional for juvenile offenders such as Eads. We cannot conclude that such a sentence nonetheless meets our state's proportionality requirement. [*Id*. at ___; slip op at 13-14 (citation omitted).][6]

Similarly, in *People v Echols*, __ Mich App __, __; __ NW3d __ (2025) (Docket No. 370709); slip op at 1, this Court held that a term-of-years sentence of 75 to 150 years for second-degree murder for an offender that was 18 years old at the time of the offense was unconstitutional. Noting that the defendant's sentence was even harsher than the sentence as issue in *Ead*s, this Court explained:

> Under this sentence, Echols will not even become eligible for parole for the first time until well past the life expectancy of individuals incarcerated as adults, let alone as youths, and several decades beyond when he would have first become parole-eligible under the life sentence deemed unconstitutional in *Stovall*. Had Echols been convicted of first-degree murder as originally charged, he would now be entitled to a resentencing hearing and would be facing a default term-of-years sentence limited to a minimum of 25 to 40 years and a maximum of 60 years. Instead, Echols, for committing a lesser offense than first-degree murder, is left with a *minimum* sentence that is *15 years higher*—and a maximum sentence that is *90 years higher*—than the default 60-year statutory upper limit for first-degree murder, and without any of the significant procedural safeguards that must be satisfied to exceed the statutory limits for first-degree murder. Such a sentence is

---

[6] In *People v Nard*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369185); slip op at 5-8, this Court distinguished *Eads* on the basis that the defendant in *Nard* was released from prison and on parole since July 17, 2024, and could be discharged from parole as early as July 17, 2026.

out of line with other jurisdictions' punishments as discussed in *Stovall*, and leaves Echols without any more meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation than a juvenile sentenced to parolable life. [*Id*. at __; slip op at 6-7 (cleaned up).]

Although the defendant in *Echols* also raised a challenge to his sentence under the nonconstitutional principle of proportionality, this Court stated that it was not necessary resolve the additional issue because it concluded that the defendant was entitled to resentencing on the basis of his constitutional challenge. *Id*. at __; slip op at 8. But this Court "observe[d], as we did in *Eads*, that we do not see how Echols's sentence could meet our state's proportionality requirement given that it is, for the reasons discussed, unconstitutionally cruel or unusual." *Id*. at __; slip op at 8. This Court additionally instructed the trial court to "ensure that its resentencing of Echols is both constitutional and in line with our state's nonconstitutional principle of proportionality" by considering the defendant's "youth and its attendant characteristics at the time of the offense as potentially mitigating—and not aggravating—factors." *Id*. at __; slip op at 8.

In this case, defendant's minimum sentence range under the sentencing guidelines was 10 years to life for the second-degree murder convictions. It is clear from the record that the trial court did not consider the mitigating factors of defendant's youth during sentencing. In explaining its concurrent sentences of 65 to 100 years' imprisonment, the trial court focused on primarily on the nature of the offense, noting that it was "savage," "inhumane," and "disgusting." The trial court remarked that it was hard "to imagine the emptiness of soul that must occupy [defendant's] spirit," and expressed that it was "shocked and dismayed and disgusted by [defendant's] behavior." But the trial court did not consider this behavior in light of the mitigating factors of youth announced in *Miller* and its progeny.

Similar to the sentences at issue in *Eads* and *Echols*, defendant's term-of-years sentences are more severe than generally authorized for offenders who were juveniles or between 18 and 20 years old when they committed first-degree murder. The default sentence for such offenders is now a minimum term of 25 to 40 years' imprisonment with a maximum of at least 60 years' imprisonment if the court decides not to sentence the defendant to LWOP. See *Taylor*, ___ Mich at ___; slip op at 12-13; *Parks*, 510 Mich at 267 n 19. See also MCL 769.25(9). Defendant's *minimum* sentence of 65 years for second-degree murder exceeds the suggested *maximum* sentence for an offender who was 18 years old when he committed first-degree murder.[7] Although the defendant in *Eads* was a juvenile when he committed second-degree murder, this Court's reasoning and conclusion that the defendant's 50-to-75-year sentence violated the principle of proportionality is persuasive here when viewed alongside the *Parks* Court's recognition that juvenile and 18-year-old offenders are not meaningfully distinguishable for sentencing purposes.

---

[7] At present, defendant's earliest release date for parole is February 6, 2047, when he would be nearly 78 years old, and his maximum discharge date from his sentence is July 26, 2075, approximately 28 years later when defendant is 106 years old, which almost certainly exceeds his life expectancy. See Michigan Department of Corrections Offender Tracking Information System <https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=194452> (accessed December 11, 2025).

Defendant was entitled to be sentenced in a manner that duly accounted for the individualized circumstances of defendant and the offenses, which included his "youth and its attendant characteristics as potentially *mitigating* factors." *Eads*, __ Mich App at __; slip op at 15. See also *Echols*, __ Mich App at __; slip op at 8 (instructing the trial court to ensure its resentencing of defendant was "in line with our state's nonconstitutional principle of proportionality[]" by considering the defendant's "youth and its attendant characteristics at the time of the offense as potentially mitigating—and not aggravating—factors.").

Accordingly, defendant's term-of-years sentences of 65 to 100 years' imprisonment for his second-degree murder and AWIM convictions are invalid for lack of proportionality and he is entitled to resentencing.

## IV. REDACTION OF TESTIMONY

Defendant argues that the redaction of the preliminary examination testimony of Anthony Ridley, who was in the home and witnessed the victims being beaten, violated his right to present a defense by depriving him of exculpatory evidence. We disagree.

A criminal defendant has a due-process right to present a defense under the state and federal Constitutions. *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016). However, a defendant's right to present evidence in his defense is not absolute. *Unger*, 278 Mich App at 250. The defendant must still comply with procedural and evidentiary rules established to assure fairness and reliability in the verdict. See *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984). Further, a "defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Unger*, 278 Mich App at 250 (cleaned up).

Ridley testified at defendant's preliminary examination, but "disappeared" before Cammons was arrested and did not testify at Cammons's preliminary examination. Because Ridley could not be located for trial, his prior testimony was read into the record. But his testimony was redacted to protect Cammons's right to confront the witnesses against him.[8] Accordingly, there was a legitimate reason for the redaction.

Defendant argues that the redaction of Ridley's testimony deprived him of exculpatory evidence because the redacted portions contradicted the only other eyewitness, i.e., Harold, who testified that Cammons told defendant to "take them home . . . get rid of them." Ridley testified at defendant's preliminary examination that after the beating at the drug house ended, Cammons stated that defendant, the tall man, and the three victims were going to "get the guy who did the breaking and entering and get the rest of the stolen property." At trial, the jury heard that Ridley heard a conversation indicating that defendant, the tall man, and the three victims were going to "get the guy who did the breaking and entering and get the rest of the stolen property[.]" Although the jury did not hear that Cammons was the source of these statements, this fact was immaterial.

---

[8] Both the United States and the Michigan Constitutions guarantee a criminal defendant the right "to be confronted with the witnesses against him . . . ." *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012), cert den 568 US 1029 (2012). See also US Const, Am VI; Const 1963, art 1, § 20.

The salient point was that defendant's alleged intent when leaving the house was to search for a thief and retrieve the stolen property, and this was conveyed to the jury by Ridley's redacted testimony. The redaction of Cammons's identity as the source of the statements did not deprive defendant of exculpatory evidence.

Defendant also asserts that the redacted portions Ridley's testimony that Cammons did not participate in the beatings would have undermined Harold's testimony that Cammons did participate in the beatings. Although Ridley's testimony contradicted Harold's testimony in this regard, whether Cammons participated in the assault is not directly related to defendant's convictions, as defendant acknowledges.

Moreover, the evidence was sufficient to support defendant's convictions and thus defendant cannot demonstrate that the redactions resulted in actual prejudice necessary to support his motion for relief from judgment. See MCR 6.508(D)(3)(b)(*i*)(A). Accordingly, the trial court did not abuse its discretion by denying defendant's motion for relief from judgment on the basis of the admission of Ridley's redacted preliminary examination testimony.

## V. PROSECUTOR'S CONDUCT

Defendant asserts that the prosecutor committed misconduct by making various comparisons to Nazis and Lebanese terrorists. Defendant also claims that the prosecutor injected race into the matter by emphasizing that the victims were white, while their attackers were black. The trial court rejected these arguments, finding that the prosecutor's comments did not deprive defendant of a fair trial. We are not left with a definite and firm conviction that the trial court made a mistake.

Because defendant did not preserve the challenged statements by contemporaneous objections and requests for curative instructions, our review is for plain error. *Evans*, 335 Mich App at 88.[9] "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To satisfy the third element, the defendant must show that the error "affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (cleaned up). "Further, we cannot find error requiring reversal where a curative

---

[9] Defendant cites to a portion of the prosecutor's rebuttal argument when trial counsel objected. However, the objection was not on the basis of the prosecutor shifting the burden of proof, denigrating the defense, or vouching. Instead, defendant asserted the prosecutor was exceeding the scope of rebuttal argument by moving beyond a response to the arguments raised in defendant's closing argument. "An objection on one ground is not sufficient to preserve an issue on a different ground." *People v Solloway*, 316 Mich App 174, 197; 891 NW2d 255 (2016). Additionally, there is no dispute defendant never requested a curative instruction during his objection.

instruction could have alleviated any prejudicial effect." *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003).

"Generally, prosecutors are given great latitude regarding their arguments and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017) (cleaned up). But a "defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007). "As with all forms of prosecutorial misconduct, this Court abhors the injection of racial or ethnic remarks into any trial because it may arouse the prejudice of jurors against a defendant and, hence, lead to a decision based on prejudice rather than on the guilt or innocence of the accused." *People v Bahoda*, 448 Mich 261, 266; 531 NW2d 650 (1995). "Therefore, this Court is not hesitant to reverse where potentially inflammatory references are intentionally injected, with no apparent justification except to arouse prejudice." *Id*. Ultimately, the question is whether the prosecutor's remarks, when viewed in context, deprived the defendant of a fair trial. *Id*. at 266-267

During closing argument, Cammons's attorney argued that Cammons never directed that anyone be killed, but only told defendant and the other man to "take them home." Defendant contends that the prosecutor's rebuttal argument impermissibly addressed Cammons's attorney's argument by comparing defendants' actions to that of the Nazis in World War II and Lebanese terrorists. We disagree. The challenged remarks, viewed in context, were part of a permissible argument that was responsive to Cammons's counsel's assertion that Cammons was "not criminally responsible" for conspiring to kill the victims. Codefendant's theory was that because Cammons merely instructed defendant and another man to "take them home," i.e., he did not instruct them to kill the victims, he had no responsibility for their deaths. In contrast, the prosecution's theory was that Cammons's instruction to "take them home" was coded language for directions to kill the victim. To illustrate this theory, the prosecutor referred to two historical events when euphemisms were used for orders to kill. The prosecutor described how, during Nazi Germany's perpetration of the Holocaust, German guards lured Jews into gas chambers by telling them that "it was time for showers," and discussed a news report that described how Lebanese kidnappers of Syrian hostages used the term "liberated" as a euphemism for "killed." The prosecutor then analogized these examples with the euphemism for killing used in this case, and also argued that criminals may use "euphemisms for killing" to keep their victims calm and cooperative. The prosecutor did not compare Cammons or defendant to Nazis or Lebanese terrorists, or equate their crimes with those of either of these groups. Although the prosecutor could have used less colorful terms and chosen less egregious examples, a prosecutor "need not speak in the blandest of all possible terms" when arguing the case. *People v Blevins*, 314 Mich App 339, 355; 886 NW2d 456 (2016) (cleaned up). We cannot conclude that defendant's right to a fair trial was violated.

Defendant also argues that the prosecutor impermissibly injected race into the trial by emphasizing that the victims were white and the defendants were black in order to arouse prejudice during a "racially-tense era." We disagree. The prosecutor's questions during trial and statements during closing argument do not show an intention to inject race into the trial and were not improper. See *Bahoda*, 448 Mich at 266.

Even if the prosecutor's challenged remarks could be considered improper, the trial court's instructions were sufficient to dispel any possible prejudice arising from the prosecutor's remarks and to protect defendant's substantial rights. *Id.* at 281. The trial court instructed the jury that the lawyers' statements and arguments are not evidence, that the jury was to decide the matter solely on the admitted evidence, that "sympathy and prejudice should not enter [the jury's] decision," and that the jury was to follow the court's instructions. Jurors are presumed to have followed their instructions, *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011), and defendant has not provided any basis for concluding that the jurors failed to do so in this case.

Because this issue was raised in a motion for relief from judgment, defendant must show actual prejudice. MCR 6.508(D)(3)(b). The evidence against defendant was overwhelming, and the jury was instructed to decide the matter solely on the evidence presented and that arguments were not evidence. Defendant cannot demonstrate that the alleged instances of prosecutorial misconduct resulted in actual prejudice necessary to support his motion for relief from judgment. Accordingly, the trial court did not abuse its discretion by denying defendant's motion for relief from judgment on the basis of the alleged instances of prosecutorial misconduct.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial counsel was ineffective for failing to object to the use of Ridley's redacted preliminary examination testimony and to the alleged prosecutorial misconduct. He further asserts that his first appellate counsel was ineffective for failing to raise in his direct appeal all of the claims asserted in the motion for relief from judgment. We disagree.

The United States and Michigan Constitutions afford criminal defendants the right to effective assistance of counsel. *Yeager*, 511 Mich at 488, citing Const 1963, art 1, § 20; US Const Am VI; *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To prevail on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different." *Yeager*, 511 Mich at 488 (cleaned up). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (cleaned up). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (cleaned up). We will not find trial counsel to be ineffective where an objection would have been meritless or futile. *Id.*

In moving for relief from judgment, "[t]he requirement of 'good cause' can be established by proving ineffective assistance of counsel." *Swain*, 288 Mich App at 631. As discussed, there was a legitimate interest to redact Ridley's preliminary hearing testimony and the redaction did not deny defendant the opportunity to present exculpatory evidence. Further, defendant did not establish that the prosecutor engaged in misconduct. Accordingly, defense counsel's failure to object to the redactions or the prosecutor's remarks was not objectively unreasonable. See *Head*, 323 Mich App at 539. And appellate counsel's failure to raise these futile arguments on direct appeal was not objectively unreasonable. *Id.* Further, it would have been impossible for defendant's current sentencing issue to be raised in his direct appeal because his appeal occurred well before *Miller* and its progeny were decided. Accordingly, the trial court did not abuse its

-12-

discretion by denying defendant's motion for relief from judgment on the basis that defendant was denied the effective assistance of counsel.

## VII. CONCLUSION

We find no error warranting reversal of defendant's convictions. But *Miller* and its progeny have rendered defendant's term-of-years sentences of 65 to 100 years' imprisonment for his second-degree murder and AWIM convictions invalid under the principle of proportionality in our state's sentencing jurisprudence. The trial court's order denying defendant's motion for relief from judgment is affirmed in part and reversed in part. We vacate defendant's sentences for second-degree murder and AWIM, and remand for resentencing. At resentencing, the trial court shall consider defendant's youth and its attendant characteristics at the time that he committed the offense as mitigating factors. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Kathleen A. Feeney

-13-